JACK L. CHUBB, Plaintiff-Appellant, *v.* AMAX COAL COMPANY, INC., *et al.*, Defendants-Appellees.

Fifth District No. 5—83—0641

Opinion filed July 11, 1984.

Robert L. Douglas, Fred W. Johnson, and Karen L. Burkybile, all of Law Offices of Robert L. Douglas, of Robinson, for appellant.

George W. Woodcock, of Woodcock, Kline & Kaid, of Mt. Carmel, for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Jack Chubb, brought the instant action for disability benefits under a group insurance policy issued to his employer, Amax Coal Company, Inc. (Amax), by Connecticut General Life Insurance Company (Connecticut General). The defendants, Amax and Connecticut General, moved for dismissal of the complaint by reason of a release executed by the plaintiff in settlement of his previous claim for total and permanent disability benefits under the same policy. The trial court granted the motion to dismiss, finding that the release was effective to bar all claims by the plaintiff under the policy in question, including those arising after the execution of the release. On appeal the plaintiff contends that the subject release was limited to claims in existence at the time of its execution and that the court thus erred in dismissing his complaint for benefits for a subsequent unrelated disability.

While the record in the instant case is incomplete due to the summary nature of the proceeding, it appears that the plaintiff had been employed by Amax for a period of time prior to 1981. Early in 1981 he made a claim under group long-term disability policy No. 041635, issued by Connecticut General to Amax for the benefit of its employ-

ees. He subsequently filed suit in Federal court on this claim, which was based upon his alleged total and permanent disability. The suit was settled by the parties, and the plaintiff received a payment of $57,000, representing 80% of the then present value of the policy benefits for total and permanent disability until the age of 65. In consideration for this payment, the plaintiff, on April 6, 1981, executed the release that is involved in this appeal.

Shortly thereafter, on August 31, 1981, the plaintiff returned to work for Amax and continued in this employment through March 31, 1983. During this time Amax deducted $450.12 from the plaintiff's salary, which represented the plaintiff's contributions on premiums to Connecticut General for its group disability coverage. On July 7, 1983, the plaintiff filed the instant complaint in which he alleged that he had suffered a myocardial infarction and was totally disabled as a result. The plaintiff alleged that, pursuant to the terms of the policy provided by Amax through Connecticut General, he was entitled to monthly payments of $1,992 for so long as he remained disabled.

In their motion to dismiss the plaintiff's complaint, the defendants set forth the release that had been executed by the plaintiff on April 6, 1981. This release stated in pertinent part:

"RELEASE

FOR AND IN CONSIDERATION of the sum of Fifty Seven Thousand Dollars ($57,000.00) *** Jack L. Chubb executes and agrees to the terms of this Release:

1. Jack L. Chubb hereby releases and forever discharges Connecticut General Life Insurance Company *** from any and all claims, demands, obligations, or causes of action of any nature whatsoever *** including, but not limited to, all claims, obligations or causes of action in any way connected with or arising out of:

(a) Group Long Term Disability Policy No. 041635 issued by Connecticut General to Amax Coal Companies, Inc. insuring its employees, ***

and/or

(b) Civil Action No. 80—4212 filed in the U.S. District Court for the Southern District of Illinois, styled 'Jack L. Chubb v. Amax Coal Companies, Inc., and Connecticut General Life Insurance Company, Hartford, Connecticut.'

* * *

6. Jack L. Chubb expressly waives and assumes the risk of any and all claims, demands, obligations or causes of action for

damages or other relief *arising out of any matter described in paragraph 1 which exist as of this date but which he does not know or suspect to exist in his favor*, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect his decision to enter this Release." (Emphasis added.)

Amax additionally tendered a refund of the plaintiff's premium payments to him, but these payments were placed in escrow pending the outcome of the case.

Pursuant to the defendants' motion the trial court dismissed the plaintiff's complaint with prejudice. The court reasoned that the release executed by the plaintiff barred him from asserting any claim or cause of action under group long-term disability policy No. 041635 and that "[t]his finding of no liability owed by [Connecticut General] pertained[ed] to matters arising after the date of the release, as well as matters arising prior to the date of the release, insofar as any claim \*\*\* would be based upon [policy No. 041635]." While noting that the condition claimed in the instant case was different from that which was the subject of the release, the court observed, nevertheless, that "the language of said release involve[d] any claims arising out of said policy, and was not limited to the specific condition or injury referred to in paragraph 1(b) of said release." Thus, the court ruled, since the claim set forth in the plaintiff's complaint pertained to policy No. 041635, it had been released by virtue of the release of April 6, 1981.

In considering the plaintiff's appeal from this judgment, we note initially that we are aware of no case that has addressed the situation here presented. The plaintiff contends that the release in question should not be construed to bar his claim for a subsequent unrelated injury that was not within the contemplation of the parties when the release was executed. While, as both the defendants and the trial court have pointed out, the plaintiff's release, by its terms, discharged the defendants of all liability arising under policy No. 041635, we decline to hold that the release was effective to bar new claims, not in existence at the time of the release, that arose after the plaintiff became re-employed by Amax and again came within the coverage of its employees' group disability policy. As will be seen, this result follows from an application of general rules of construction regarding releases as well as from considerations of public policy.

■■■ It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts. (*Murphy v.*

*S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456.) The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction. (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 442 N.E.2d 1362.) It is similarly stated that a release, no matter how broad its terms, will not be construed to include claims not within the contemplation of the parties (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456), and, where the language of the release is directed to claims then in existence, it will not be extended to cover claims that may arise in the future. *LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496; *Keeran v. Wahl Co.* (1943), 320 Ill. App. 457, 51 N.E.2d 598.

While the plaintiff makes an initial argument that the release in question was a special release limited to the particular injury and cause of action that was the subject of his prior suit, the language contained in paragraph one of the release is plenary in its terms and is not limited by reference to the suit then pending between the parties. Indeed, by paragraph six of the release, the plaintiff expressly waived all claims arising under the policy that were in existence as of the date of the release, including those of which he was unaware at the time. Moreover, Connecticut General's payment to the plaintiff representing the present value of benefits for total and permanent disability to age 65 showed that the parties intended the release to cover all claims then held by the plaintiff under the policy. Thus, both the language and circumstances of the release support the conclusion that it was effective to bar all claims by the plaintiff, whether known or unknown, that existed under the policy as of the date of the release.

Notwithstanding this express release of claims in existence but unsuspected by the plaintiff, the defendants urge a construction of the release as barring the instant claim that arose after the execution of the release. Here, again, reference must be made to the intention of the parties, as a release ordinarily includes only claims in existence at the time it is executed (see 76 C.J.S. *Release* sec. 53 (1952); Havighurst, *Principles of Construction and the Parol Evidence Rule as Applied to Releases*, 60 Nw. U. L. Rev. 599, 611 (1965) (hereinafter Havighurst, *Construction of Releases*)), and claims that originate subsequent to its execution are not discharged absent a clear expression of intent to that effect. *Rotberg v. Dodwell & Co.* (2d Cir. 1945), 152 F.2d 100; *Rensink v. Wallenfang* (1959), 8 Wis. 2d 206, 99 N.W.2d 196; see *W.J. Perryman & Co. v. Penn Mutual Fire Insurance Co.*

(5th Cir. 1963), 324 F.2d 791.

In the instant case there is no indication that the parties considered the possibility of future claims arising under the policy from unrelated causes after the execution of the release. Indeed, at the time of the release, the plaintiff was no longer covered by the policy in question because he had ceased his employment with Amax, and, by virtue of his claim for total and permanent disability benefits, it appeared that his unemployment would continue indefinitely. Connecticut General thus had no reason to suppose that the plaintiff would again come within coverage of the policy so as to make a new claim or to provide for that possibility in the release executed by the plaintiff. Moreover, the express reference in paragraph six to claims under the policy that "exist as of this date" implicitly limited the release of future claims to those that were in existence but unsuspected by the plaintiff, as such a provision would have been unnecessary if the general language of paragraph one had been intended to include every possible future claim under the policy. The general language of paragraph one, therefore, should not be construed to bar the instant claim under the policy for a disability that occurred after the date of the release where the language and circumstances of the release did not reflect the parties' intent to that effect. *Cf. Rensink v. Wallenfang* (1959), 8 Wis. 2d 206, 99 N.W.2d 196 (release executed by wife in suit for injuries in auto accident, covering all claims she "might have" resulting from accident, did not bar action for subsequent death of husband as a result of accident).

This construction of the release is further justified by considerations of public policy regarding the effect of the release on the parties' future relationship. As noted in legal commentary on the subject of releases, a release covering all claims that might later arise between the parties "would constitute a consent to the foregoing of legal protection for the future and would plainly be against public policy." (Havighurst, *Construction of Releases*, at 616.) In the specific context of disability insurance, it has been observed that "if [an] insurer were relieved absolutely of [all] liability for any future accidents, the coverage might as well be terminated, as it [would have] become a nullity." 3 Appleman, Insurance sec. 1670, at 472 (1967).

In the instant case the plaintiff's coverage under policy No. 041635 derived from his employment relationship with Amax. Despite the settlement of his previous claim under that policy, when the plaintiff became re-employed by Amax he again came within the group of employees covered by policy No. 041635. To hold that the plaintiff was precluded from bringing any claim for disability under that policy

would render this coverage a nullity and would deprive the plaintiff of any legal recourse on the policy after the parties had again entered into a contract of insurance. Because of the nature of a group insurance policy as a blanket policy covering all employees who come within its eligibility requirements (see *Aetna Life Insurance Co. v. Messier* (M.D. Pa. 1959), 173 F. Supp. 90; 44 Am. Jur. 2d *Insurance* sec. 1842 (2d ed. 1982); see also Ill. Rev. Stat. 1983, ch. 73, pars. 979, 979a), the plaintiff, upon re-employment, should not be denied coverage based upon the fortuitous circumstance that this coverage was provided by the same group policy under which he had released his prior claim. The plaintiff, therefore, will not be presumed to have relinquished his rights under the policy that arose upon his re-employment where such would be contrary to public policy.

Despite our holding, however, that the plaintiff is entitled to make another claim under the policy in question, the fact that he has already received benefits under that policy cannot be disregarded. The plaintiff's benefits are governed by the parties' contract of insurance, and where he has been paid for one total and permanent disability, this would seem to preclude another such recovery under the contract. (See 3 Appleman, Insurance sec. 1670, at 476-77 (1967).) If, upon remand, then, the plaintiff is found to have been totally and permanently disabled by his present condition, the defendant insurer may be allowed to offset the benefits due under the present policy by the amount already paid to the plaintiff for his previous total and permanent disability.

Since the plaintiff's previous coverage under the policy in question had terminated upon cessation of his employment with Amax, his rights upon re-employment would be governed by the policy in effect at the time of re-employment. (19 Couch, Insurance sec. 82:99 (2d ed. 1983); see *Williams v. Sun Life Assurance Co.* (1940), 235 Mo. App., 741, 148 S.W.2d 112.) Thus, in his present claim for total and permanent disability benefits, the plaintiff would be entitled to any increased benefits provided by the policy in effect at that time. In addition, if our interpretation of the amount of the previous settlement is correct from the sparse record before us, the plaintiff would also be able to reach the other 20% of policy benefits for total and permanent disability that he had foregone in compromising his earlier claim.

The result here reached would give the plaintiff the benefit of his renewed contractual relationship with the defendant while preventing a double recovery of amounts due under the policy. We note in passing that the net effect of this approach would be comparable to the situation where, rather than making a lump sum payment of benefits for

total and permanent disability, the insurer pays monthly benefits that are terminated upon a showing that the insured has recovered from the disability and resumed employment. (See generally 15 Couch, Insurance secs. 53:114 through 53:117 (2d ed. 1983); *Greenberg v. Metropolitan Life Insurance Co.* (1942), 379 Ill. 421, 41 N.E.2d 495 (under insurance policy providing for monthly payments for total and permanent disability, insurer protects itself in case of recovery of insured by policy provision requiring periodic proof of continuance of disability).)

For the reasons stated in this opinion we reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.

WELCH, P.J., and KASSERMAN, J., concur.