DONALD P. CARONA, Plaintiff-Appellant, v. ILLINOIS CENTRAL GULF
RAILROAD COMPANY, Defendant-Appellee.

Fifth District   No. 5—89—0147

Opinion filed September 18, 1990.

Robert W. Bosslet, Jr., of Morris B. Chapman & Associates, Ltd., of Granite City, for appellant.

David C. Bohrer, of Oppenheimer, Wolff & Donnelly, of Chicago, and Paul M. Brown, of Coburn, Croft & Putzell, of Belleville, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The circuit court of Madison County entered a summary judgment for the defendant, Illinois Central Gulf Railroad Company, in a Federal Employer's Liability Act (FELA) action (45 U.S.C. §51 *et seq.* (1982)) brought against the defendant by the plaintiff, Donald P. Carona, for injuries he allegedly sustained in a work-related accident on February 22, 1986. The basis of the court's order granting the motion for summary judgment was a document entitled "Final Settlement and Release" signed by the plaintiff. The plaintiff appeals the circuit court's order, contending that the circuit court erred when it granted the defendant's motion (1) because there were genuine issues of material fact which were disputed, and (2) because his suit was not barred by the written release as (a) the release was limited to his injuries sustained at work on July 29, 1983, and this suit was for injuries incurred in a work-related accident on February 22, 1986, (b) the written portions take precedence over the printed form of the release, (c) any ambiguity in the release will be construed most strongly against the party drawing the document, and (d) a mutual mistake of fact will vitiate the release.

Before considering the issues raised on appeal, it is necessary to an understanding of this case to set forth the facts as revealed from the limited record presented. On January 5, 1984, the plaintiff filed a complaint against the defendant in which he alleged a cause of action

under FELA for injuries to the rotator cuff of his left shoulder which he incurred in a work-related accident on July 29, 1983. On August 14, 1986, the plaintiff signed a document entitled "Full Settlement and Release" for this claim. Subsequently, on December 19, 1986, the plaintiff filed a second complaint against the defendant in which he alleged a second and separate cause of action under FELA for injuries sustained to the "muscles, tendons, ligaments, nerves, bones, discs, and soft tissues of his neck and cervical spine" incurred in a work-related accident on February 22, 1986.

The defendant filed an answer to the plaintiff's second complaint, and in the answer, in addition to denying the plaintiff's allegation, the defendant also raised the defense that the plaintiff's cause of action was barred by the "doctrine of payment and release." Subsequently, the defendant filed a motion for summary judgment. As part of the defendant's motion, the defendant filed an appendix in which the release, an affidavit of J. Randal Little, and excerpts of numerous discovery depositions were included. The plaintiff filed no documentation to counter the defendant's motion. On February 3, 1989, the circuit court heard the parties' arguments on the defendant's motion for summary judgment and took the matter under advisement, and on February 14, 1989, the court entered an order granting the defendant's motion. The plaintiff filed a motion to reconsider and a supplement to the motion which was subsequently denied, following a hearing, on March 1, 1989.

■■ A summary judgment is an extraordinary measure and should only be employed where the right of the movant is clear and free from doubt, and any evidence in support of the motion must be construed strictly against the moving party and liberally in favor of the opponent. (*W.H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 475 N.E.2d 273.) A summary judgment should only be granted where the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. (*W.H. Lyman Construction Co.*, 131 Ill. App. 3d 87, 475 N.E.2d 273.) On review, all the grounds urged and the facts revealed in the record must be considered to determine if a genuine issue of material fact remained to be determined by a jury and that the defendant was entitled to summary judgment as a matter of law. (*Moore v. Hill* (1987), 155 Ill. App. 3d 1, 507 N.E.2d 1314.) With these principles in mind, we now address the case *sub judice*.

In the instant case, the court did not state the basis for his order granting the defendant's motion; therefore, our analysis of the pro-

priety of the circuit court's order will encompass both of the grounds raised in the defendant's motion for summary judgment. The first ground raised in the defendant's motion was that the release signed by the plaintiff was a general release which barred the plaintiff's suit. If the court's decision for summary judgment was based upon the language of the release, then the court decided the case as a matter of law. Therefore, our first consideration must be the release itself. The terms of the release in question are in pertinent part as follows:

"I, (We), *Donald P. Carona*, of the City or Town of *Alton*, State of *Illinois*, for the sole consideration of *One Hundred Eighty Thousand* Dollars *($180,000)*, in hand paid to me (us) by Illinois Central Gulf Railroad Company, the receipt whereof is hereby acknowledged, do hereby release, acquit, and forever discharge the said Illinois Central Gulf Railroad Company, its lessors, lessees, licensors, licensees, and any and all lines or companies owned, operated or controlled by or allied with it, their respective successors and assigns, *and all others covered* from any and all claims, demands, suits, actions, causes of action, and damages whatsoever, which I (we) now have or may in the future have against them, or any of them, in consequence, directly or indirectly, of any matter or thing done or suffered to be done by any of them prior to and including the date hereof, and more particularly on account of *[a]n injury/accident/incident that occurred while in the employ of the Illinois Central Gulf Railroad* at or near *New Orleans, La.* on or about the *29th* day of *July 1983*.

\* \* \*

*As a condition of this settlement the ICGRRCo will pay, upon presentation of supportive documentation any billing up to $3,500 for rehab services, to be completed within one year from this date. As a further condition of this settlement Donald P. Carona resigns from the service of the ICGFRRCo. and releases all labor claims.*

\* \* \*

THIS IS NOT A RECEIPT FOR WAGES—IT IS A GENERAL RELEASE" (Emphasis added to indicate the portions of the document that were handwritten.)

The release was executed by the parties on August 14, 1986. The defendant urged in its motion for summary judgment that the phrase "any and all claims, demands, suits, actions, causes of action, and damages" prevented the plaintiff from bringing his current claim.

The plaintiff contends that the reference to the specific accident of July 1983 in the release limited the general language contained therein.

A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts. (*Chubb v. Amax Coal Co.* (1984), 125 Ill. App. 3d 682, 466 N.E.2d 369.) It is well established that the intention of the parties controls the scope and effect of the release, and that this intent is discerned from the language used and the circumstances of the transaction. (*Chubb*, 125 Ill. App. 3d 682, 466 N.E.2d 369; *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 442 N.E.2d 1362.) A release cannot be construed to include claims not within the contemplation of the parties, and it will not be extended to cover claims that may arise in the future. (*Chubb*, 125 Ill. App. 3d 682, 466 N.E.2d 369.) It is also the law in Illinois that, where a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made. *Whitehead*, 110 Ill. App. 3d 759, 442 N.E.2d 1362.

Here, the release signed by the parties contained words of general release; however, the release also specifically referred to the incident of July 29, 1983. Under the law, this specific language reflects that the parties intended to release only those actions which would arise in the future from the July 1983 accident. In the action brought by the plaintiff in 1986, he alleged that his injuries were due to a separate and unrelated accident which occurred in February of 1986. Since this action was not a claim which arose out of the 1983 incident, the plaintiff's second complaint was not barred under the language of the release.

Further, the circumstances surrounding the signing of the release reinforce the conclusion that the parties only intended to bar those actions arising out of the July 1983 incident. In the plaintiff's discovery deposition, he stated he was aware of his injuries incurred in February, *i.e.*, before the signing of the release; however, the only discussion between himself and the railroad's representative, J. Randal Little, at the time of the signing of the release was about the plaintiff's injuries incurred in the 1983 accident. Likewise, J. Randal Little stated in his affidavit that at the time of the signing of the release he had no knowledge of any injury to the plaintiff subsequent to the July 1983 incident. Since both of the parties limited their discussion to the July 1983 incident, it cannot be said that the parties intended to release the subsequent 1986 claim. Additionally, the rec-

ord reveals that the plaintiff was not represented by counsel at the time of the signing of the release. As a layman, the plaintiff's perception that the release only related to his first injury should not prevent him from bringing suit for other unrelated claims for which the defendant may be liable, and to so hold would violate public policy. These circumstances support our determination that the release did not legally bar the plaintiff's 1986 claim, and the circuit court's decision that the defendant was entitled to a summary judgment as a matter of law under the language of the release was erroneous.

The defendant relies on *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791, to support its argument that the release was unambiguous and that the release barred any claims in existence before the execution of the release. We find that *Rakowski* is not dispositive of the instant case. In *Rakowski*, Lucente executed a release in favor of Rakowski following an automobile accident in which both were involved. Subsequently, Rakowski and his passengers sued Lucente for personal injuries. In turn, Lucente countersued Rakowski for contribution for the passengers' injuries. The supreme court found that the release signed by Lucente barred his countersuit. In *Rakowski*, all of the claims being sought arose out of the particular incident named in the release and all of the claims came into being at the time of the specific accident. In the case *sub judice*, the plaintiff has filed a claim based upon a separate and distinct accident from the incident particularized in the executed release. The supreme court did not address the specific issue raised in this case in *Rakowski*, and because of the factual differences between *Rakowski* and this case, we find that *Rakowski* does not apply.

Having determined that the language of the release did not bar the plaintiff's suit as a matter of law, we next consider the second ground raised by the defendant's motion for summary judgment, whether the plaintiff's 1986 injuries were a continuation of his 1983 injuries. This determination is a factual one, and if the defendant presented sufficient evidence to show there was no dispute as to this material issue, then the court's order allowing the summary judgment was proper, for the release would then bar the plaintiff's suit. Our review of the evidence presented by the defendant leads to the conclusion that different inferences can be drawn from this evidence as to whether the plaintiff's injuries of 1986 were new injuries or were a continuation of his prior injuries of 1983.

The defendant, in support of its contention that the plaintiff's injuries were a continuation of his previous injuries, presented numerous excerpts of discovery depositions of physicians and a chiroprac-

tor, as well as portions of the plaintiff's discovery deposition. In the plaintiff's deposition, he testified that on February 22, 1986, he was pulling on a switch when he first felt pain in the upper part of his back. The pain was predominantly in the center of his back, just below his neck. He thought at first that the pain was coming from his shoulder; however, he had not experienced a pain similar to this before this incident. After throwing the switch, the plaintiff told the conductor of the train that the switch was bad and should be reported, and he also told the conductor that he thought he had pulled "something." This incident occurred early in the plaintiff's work shift, and he continued to work until his shift ended, approximately six hours later. His pain did not abate during the day, and the more work he did, the worse the pain became. The plaintiff worked his next regular shift, about 20 hours later, on February 24, 1986, but he stated he told the engineer and the flag man that he was unable to work. The plaintiff asked for personal leave on February 25, 1986, which he subsequently changed to sick leave. The plaintiff did not return to work after February 26, 1986.

The excerpt of Dr. Tom Hennington's discovery deposition revealed that the doctor had seen the plaintiff on February 18, 1986, and then again in August of 1986. At the plaintiff's visit in August of 1986, the doctor did not perform a physical examination of the plaintiff, but administered manipulation therapy. The doctor's diagnosis of the plaintiff's condition was cervical radiculitis (inflammation of the root of a spinal nerve as it emerges from the spinal cord), and the doctor stated that he treated "this as though it were an exascerbation [sic] of the same old thing I had seen him on for the last several years." The doctor did not associate the plaintiff's condition with a particular injury at the work place, and the doctor had no knowledge of the incident of February 22, 1986. The doctor testified that he did not believe that the plaintiff was in the area around February 22, 1986, and that the plaintiff was unavailable for the doctor to see him before August of 1986.

Dr. George Schoedinger testified in the excerpt of his discovery deposition that he had examined and evaluated the plaintiff, and that both he and Dr. Dusek had treated the plaintiff. Dr. Schoedinger first saw the plaintiff on November 3, 1983, and the plaintiff's last visit to him was on July 22, 1986. Dr. Schoedinger saw the plaintiff on February 28, 1986, and at this visit, the plaintiff had no new complaints which were different from his previous problems, and the doctor attributed the plaintiff's complaints to the July 1983 incident. The symptoms that the plaintiff complained of were tightness about the

shoulder, a feeling of "popping" when he used his upper limb, and pain. The plaintiff did not complain of neck pain to Dr. Schoedinger.

Dr. Schoedinger conducted a physical examination of the plaintiff, and his examination revealed that the plaintiff's range of motion of his cervical spine was unimpaired. Dr. Schoedinger also determined that the plaintiff was essentially nondiagnostic with respect to his cervical spine and neck. It was Dr. Schoedinger's opinion that if the plaintiff had had a neck injury a few days prior to February 28, 1986, the injury would have manifested itself in some fashion. The doctor stated it would be highly unusual for someone to have a cervical spine injury and have no symptoms. The doctor went on to state that a person may not develop a full bone symptom complex immediately, but that this may develop in a number of days or even weeks. The doctor found that the plaintiff had no neurological abnormality, and on February 28, 1986, the doctor determined that there was no evidence that the plaintiff had a cervical disc injury. The doctor felt that the plaintiff presented conditions which were solely related to the left shoulder girdle, and that the left shoulder girdle was the same condition as the doctor had previously diagnosed the plaintiff to have. The doctor did find that the plaintiff had "denervation potentials involving his left deltoid, which is consistent with an injury to his axillary nerve (the nerve which goes around the armpit and into the deltoid muscle)," but that the plaintiff had a history of injury to the left shoulder and it was possible the axillary nerve was injured at that time.

In the excerpt of Dr. Dennis Dusek's discovery deposition, Dr. Dusek testified that he saw the plaintiff for the first time on March 25, 1985. Dr. Dusek had seen the plaintiff on January 31, 1986, just prior to the incident of February 22, 1986, at which time Dr. Dusek released the plaintiff for work. It is inferred from the deposition that Dr. Dusek had repaired the plaintiff's rotator cuff injury incurred in the 1983 accident. Dr. Dusek next saw the plaintiff on July 27, 1986, and at that visit, the plaintiff had new complaints. The plaintiff complained of some numbness and muscle spasms in his shoulder on the left side. The doctor stated that the urgency of these symptoms was different from previous visits, and that these symptoms had not surfaced before; therefore, the doctor assumed the symptoms were relatively new.

The doctor was aware that the plaintiff had been off work on sick leave. The doctor had the plaintiff undergo an EMG (electromyogram) and a nerve conduction study. The doctor found that the plaintiff's EMG was normal, as was the nerve conduction study. The

nerve conduction study did reveal that the left deltoid muscle had mild denervation potentials which was consistent with mild left axillary neuropathy. The doctor found it difficult to say why the axillary nerve might have been injured, but gave the rotator cuff repair as one possibility. The doctor ruled out that the plaintiff had a cervical disc injury, and in his opinion, the plaintiff's condition was caused by his trauma of July 1983.

In Dr. Bruce Vest's discovery deposition, Dr. Vest testified that he saw the plaintiff on August 12, 1986. At that time, the plaintiff complained of cervical pain radiating into the right side with a marked restriction of motion. The plaintiff had given the doctor a 10-day history of cervical neck pain, *i.e.*, that 10 days prior to the visit the plaintiff had an onset of severe neck pain without trauma. A MRI (magnetic resonance imaging) test conducted by the doctor indicated the plaintiff had a mild degeneration of a disc at C5-C6 with a slight posterior bulging and was suggestive of a mild compression of the dural sac. Based on the history taken by the doctor, the doctor had no knowledge of an accident or a single event that would have caused the plaintiff's condition.

Dr. Lee Vander Lugt testified that at the plaintiff's first visit to him, he diagnosed the plaintiff's condition as cervical sprain syndrome and post-reconstructive surgery on the left shoulder and possibly a left C8-T1 radiculopathy (disease of the roots of the spinal nerves). The tests the doctor ran on the plaintiff were normal, and the doctor found no evidence of a herniated or ruptured disc at the cervical spine and no evidence of nerve impingement.

Dr. Brinkley, a chiropractor, testified that he first examined the plaintiff on August 1, 1986. At that time, the plaintiff complained of severe pain in the lower neck and right shoulder girdle. According to Dr. Brinkley, the plaintiff told him that the pain had been bothering him for two days and had begun after the plaintiff had "cranked" a winch at home.

Dr. Brinkley's examination of the plaintiff revealed that the plaintiff had severe spasms of the muscles in the neck area. Dr. Brinkley determined that the plaintiff's neck problems appeared to have existed for more than two days prior to his examination, but that the problem had become severe the two days prior, *i.e.*, that there was an acute exacerbation of a chronic problem. Dr. Brinkley could not state when the plaintiff's problems started.

■ ■ From the evidence of the foregoing depositions, we determine that more than one inference could be drawn regarding the plaintiff's injuries. One doctor found that the plaintiff had mild de-

generation of a cervical disc; one doctor determined that the plaintiff had cervical sprain syndrome; a third doctor diagnosed the plaintiff's condition as cervical radiculitis; and the other two doctors determined that the plaintiff did not have a cervical disc injury but these doctors did not give an opinion as to whether. the plaintiff may have a cervical sprain. The evidence thus presented by the defendant does not remove doubt as to how or when the plaintiff's injuries arose nor does it negate the plaintiff's allegations that he suffered injury to his neck in February 1986. If the circuit court determined that the defendant was entitled to summary judgment upon the evidence presented by the defendant, it appears that the court tried the plaintiff's claim on the evidence and resolved any doubts in the defendant's favor. It is not the role of the court to try the issues to determine if a summary judgment is proper, but the sole purpose of a summary judgment is to determine if in fact triable issues exist. We find that the determination that the defendant was entitled to summary judgment is not free and clear from doubt and that there is a genuine dispute as to a material fact presented, and accordingly, we hold that the circuit court erred when it granted the defendant's motion for summary judgment.

Lastly, we note that the plaintiff has set forth other arguments regarding why this court should reverse the circuit court's decision; however, because of our disposition of this case, it is unnecessary to consider these additional arguments presented by the plaintiff.

For the foregoing reasons, the order of the circuit court of Madison County allowing the defendant's motion for summary judgment is reversed, and this cause is remanded to the circuit court for further proceedings.

Reversed and remanded.

HOWERTON and GOLDENHERSH, JJ., concur.