In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1732

DELBERT HEARD,

*Plaintiff-Appellant,*

*v.*

ANDREW TILDEN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois
No. 14-1027 — **Joe Billy McDade**, *Judge.*

SUBMITTED DECEMBER 4, 2015[*] — DECIDED JANUARY 11, 2016

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Delbert Heard, an Illinois inmate, claims in this lawsuit under 42 U.S.C. § 1983 that the defendants— Dr. Lewis Shicker, the medical director for the Department of Corrections; Wexford Health Sources, which contracts

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

with the Department to provide medical care for inmates; and Dr. Andrew Tilden, a Wexford employee—violated the Eighth Amendment's ban on cruel and unusual punishment by delaying surgery for a hernia. At screening, *see* 28 U.S.C. § 1915A, the district court concluded that Heard's complaint states a claim of deliberate indifference to a serious medical need, *see* FED. R. CIV. P. 12(b)(6). The court, though, did not allow Heard to proceed against Dr. Shicker, reasoning that the medical director was sued in his official capacity and thus, as a substitute for the State of Illinois, was not a "person" subject to liability under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Later the court granted summary judgment for Wexford and Dr. Tilden, who argued that Heard had released them from liability when he settled two earlier lawsuits. Those lawsuits alleged, as here, that Wexford and its physicians had delayed surgery for hernias. On appeal Heard argues, and we agree, that both rulings are erroneous.

Except as noted, the following facts are undisputed. For twenty years Heard has suffered from inguinal hernias, i.e., hernias in the groin. When Heard's current imprisonment in the Department of Corrections began in 1995, he already had been diagnosed with one painful hernia. A second hernia, on the other side of his groin, was diagnosed in 2000. Outside physicians concluded that both hernias required surgical repair, but the Department and Wexford stalled until

May 2007 after both hernias had become incarcerated,[1] prompting emergency surgery. By then Heard had brought the first of two parallel suits (the first was filed in February 2006, the other in May 2009) claiming that employees of the Department and Wexford had been deliberately indifferent by not authorizing surgery sooner. *See Heard v. Ill. Dep't of Corr.*, No. 06 C 644, 2012 WL 5199616 (N.D. Ill. July 13, 2012); *Heard v. Wexford Health Sources*, No. 3:09-CV-00449-JPG-PMF, 2011 WL 4479309 (S.D. Ill. Oct. 4, 2012).

Heard did not prevail against the Department employees. At trial on his 2006 lawsuit, a jury returned verdicts in favor of Wexford but against a Wexford physician. The company and its employees then settled both lawsuits in September 2012 for $273,250. In exchange Heard agreed to release Wexford and the doctors

> from and for any and all actions, causes of action, claims, demands, damages, costs, loss of services, expense and compensation, including attorney's fees, on account of or in any way arising out of, any and all known and unknown personal injuries resulting ~~or which may result~~ from the incidents or events involving DELBERT HEARD, while he was incarcerated in the Illinois Department of Corrections that Heard claims violated his constitutional

---

[1] An inguinal hernia is incarcerated when the intestine protruding through the weak spot in the abdominal wall becomes trapped. *Inguinal Hernia—Complications*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/inguinal-hernia/basics/complications/con-20021456?reDate=04122015 (visited Dec. 9, 2015).

rights, including without limitation his inguinal hernias, which are the subject matter of cases 06 C 644 … and 09 CV 00449.

In the original document, Heard initialed a line drawn through the words "or which may result from." His attorney had told the Wexford defendants that Heard would not sign the release unless those words were deleted.[2]

At some point after his 2007 surgery, Heard developed a "recurrent" left hernia (i.e., in the same place as the left hernia that was surgically repaired in 2007, *see* Giampiero Campanelli et al., *Inguinal Hernia Recurrence: Classification and Approach*, J. MINIMAL ACCESS SURGERY, 2006 Sep., at 147–50, *available                                                            at* www.ncbi.nlm.nih.gov/pmc/articles/PMC2999775/). In January 2013, Dr. Tilden referred Heard for a surgical consultation, and a March 2013 computerized tomography scan con-

---

[2] In a letter to Heard dated after the filing of the defendants' motion for summary judgment in this case, Heard's (now former) lawyer offered this opinion about the deleted language:

> With or without the scratched out language in your Release, you have not waived any claims based on Wexford's continued new violation of your constitutional rights. Just because you released them from claims you sustained in 2007, does not mean that you authorize them to continue to violate your constitutional rights in the future. The fact that it may have exacerbated the injury you previously sustained does not waive your rights to bring a future claim and does not change the fact that you can sue them for their new violations of your rights.

The district court permitted Heard to introduce counsel's letter at summary judgment.

firmed the recurrent hernia. A surgeon at the University of Illinois Medical Center discussed the CT scan with Heard and advised that surgery would be scheduled through a Department of Corrections liaison. The surgeon's progress notes from this visit indicate that Heard said he had known about the recurrent hernia since his 2007 surgery. A second surgery did not occur until late July 2013, four months after the CT scan.

Heard again sued, claiming this time that Wexford, Dr. Tilden, and Dr. Shicker, the Department's medical director, all had been deliberately indifferent to a serious medical need by delaying the second surgery. (A fourth defendant, Dr. Arthur Funk, who serves as Wexford's regional medical director, was dismissed at screening. Heard does not challenge this ruling, so we do not discuss that defendant.) Heard alleged that, ever since April 2011, Dr. Tilden had delayed authorizing the second surgery because of a policy, which Dr. Shicker created and Wexford enforced, to classify hernia surgeries as elective, unnecessary procedures. Heard's previous lawsuits presented this same theory.

The Wexford defendants did not answer Heard's complaint. Instead, six days after the district court had entered a scheduling order authorizing discovery to proceed, the defendants moved for summary judgment solely on the grounds that Heard's release, as well as the doctrines of claim and issue preclusion, foreclosed the § 1983 action as a matter of law. Almost a year later, the district court granted that motion. The court reasoned that Heard had released all claims known to him when he executed the settlement agreement, and that—as evidenced by his complaint—he knew in April 2011 that he needed a second surgery. The

court did not address the alternative defenses of claim and issue preclusion.

On appeal Heard contends that the September 2012 release does not shield Wexford or Dr. Tilden from liability for deliberate indifference to his recurrent hernia, which, although known to him before he executed the release, was not surgically repaired for another ten months. In response the Wexford defendants continue to rely on the release but also reassert their defenses of claim and issue preclusion. We are not persuaded by any of these three defenses.

We can quickly dispense with the preclusion arguments. We are puzzled by the defendants' contention that the doctrine of issue preclusion bars Heard from litigating whether they were deliberately indifferent to his need for hernia surgery in 2013. The defendants point to the jury's verdict in Wexford's favor during the 2006 trial, but that jury also found *during the same trial* that a Wexford doctor had been deliberately indifferent to Heard's need for hernia surgery. Regardless, those verdicts were supplanted by the settlement agreement, and settlement agreements generally do not give rise to issue preclusion—as opposed to claim preclusion—unless it is clear that preclusion is what the parties intended. *See Arizona v. California*, 530 U.S. 392, 414 (2000); *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1211–12 (9th Cir. 2009); *Nichols v. Bd. of Cty. Comm'rs of Cty. of La Plata, Colo.*, 506 F.3d 962, 969 (10th Cir. 2007). The release presented to Heard includes a representation that Wexford and its employees—including the doctor found liable by the jury—"expressly denied" "any liability," so the parties clearly did not intend for the jury's verdicts to have preclusive effect. Moreover, even if the verdicts or the settlement would

preclude Heard from relitigating whether Wexford and its employees were deliberately indifferent to Heard's medical needs prior to 2007, that limitation would be irrelevant to Heard's complaint in this case, which involves fresh allegations of stalling a different surgery, and even a different Wexford physician.

The defendants' reliance on the doctrine of claim preclusion fares no better. Under federal law, claim preclusion requires, among other elements, that the second lawsuit assert claims arising "out of the same set of operative facts" as the first lawsuit. *See Matrix IV, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011); *see also Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2012). In arguing that this element is satisfied, the defendants conceptualize too broadly the injury about which Heard complains. It is true that this lawsuit also involves a complaint about delay in providing hernia surgery, but that is where the similarity with the earlier lawsuits ends. Heard's present action asserts a new claim of deliberate indifference distinct from the Eighth Amendment claims in his first two lawsuits. As we explained in a related context during one of Heard's earlier appeals, every day that the defendants improperly refused to treat Heard's condition potentially constituted a new act of deliberate indifference. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013); *Devbrow v. Kalu*, 705 F.3d 765, 769–70 (7th Cir. 2013). The doctrine of "claim preclusion generally does not bar a subsequent lawsuit for issues that arise after the operative complaint is filed" in the first lawsuit, *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 652 (7th Cir. 2011); *see Smith v. Potter*, 513 F.3d 781, 783–84 (7th Cir. 2008), so Heard's allegation that the defendants *once again* displayed deliberate

indifference to his recurrent hernia in no way arises from the operative facts of the previous lawsuits, *see Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1326 (7th Cir. 1992) ("Traditional principles of preclusion allow additional litigation if some new wrong occurs.").

What remains, then, is the release itself, upon which the Wexford defendants primarily rely. The defendants focus on what they characterize as the release's broad language, which they read as exonerating Wexford and its employees of liability for "all 'known and unknown' claims arising from Plaintiff's inguinal hernia condition, of which the 2006 and 2009 cases are examples."

We cannot accept that reading. A release is a contract, and thus, even though the settlement occurred in litigation brought in federal court, Illinois law governs the effect of the release at issue here. *Capocy v. Kirtadze*, 183 F.3d 629, 632 (7th Cir. 1999); *see Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009). When a release that includes broad language also refers specifically to particular claims, Illinois courts limit the scope of the release to the claims arising from those specific references. *Capocy*, 183 F.3d at 632; *Carona v. Ill. Cent. Gulf R.R. Co.*, 561 N.E.2d 239, 242 (Ill. App. Ct. 1990); *Whitehead v. Fleet Towing Co.*, 442 N.E.2d 1362, 1365 (Ill. App. Ct. 1982); *see also Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. App. Ct. 1991). Here, the references to the 2006 and 2009 lawsuits limit the scope of the release to claims arising in those actions, i.e., that Wexford and its employees had been deliberately indifferent in delaying the first surgery for the bilateral hernias that were finally repaired in 2007. Neither of those suits alleged that the defendants also had been stalling surgery for Heard's recurrent

hernia, which, by definition, could not have developed until *after* the 2007 surgery.

The defendants seek to distinguish this adverse authority by observing that, where both parties were aware of an additional claim when a release was executed, Illinois courts will give effect to a broad release despite references to specific claims. *See Capocy*, 183 F.3d at 632. Yet this argument mischaracterizes the nature of the harm that Heard alleges in this case. Heard may well have known in September 2012 that a new hernia had developed. Indeed, he might even have thought that surgery would be required. But surely the Wexford defendants do not suggest that both he and they anticipated when the release was signed that Wexford doctors would intentionally delay the surgery for many months after learning it was medically necessary. That is the nature of deliberate indifference to a serious medical need, which is the Eighth Amendment claim presented by this action. Heard could not possibly have expected that, at some point in the future, the Wexford defendants would repeat the same conduct that led to a significant settlement of the 2006 and 2009 lawsuits, and thus the release cannot plausibly be read as completely barring Heard's new lawsuit. *See Hampton*, 561 F.3d at 715 (explaining that a general release typically covers all claims about which a signing party has actual knowledge or that he could have discovered upon reasonable investigation); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89–90 (Ill. 2003) ("It is clear that a contractual release cannot be construed to include claims not within the contemplation of the parties, and it will not be extended to cover claims that may arise in the future."); *Carona*, 561 N.E.2d at 242 (noting that "the intention of the parties controls the scope and effect of the release").

Again, the question is not whether Heard knew when he executed the release that he had a history of inguinal hernias. Heard had suffered from hernias for twenty years. The defendants may be suggesting that, by prolonging Heard's first surgery, they made it more likely that he would experience recurrent hernias in the future, and to that extent Heard arguably has been compensated for that increased risk. But that cannot mean, as the Wexford defendants argue, that the company's doctors were free to ignore the recurrent hernia as it grew increasingly painful over time. "[A] hernia can be an objectively serious medical problem," *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *see Heard*, 253 F.3d at 317–18, and Heard himself required emergency surgery in 2007. Under the defendants' expansive reading of the release, they could have refused indefinitely—with impunity—to arrange for Heard's second surgery, even if the untreated hernia eventually endangered his life. That interpretation clearly is against public policy, *see Feltmeier*, 798 N.E.2d at 90; *Chubb v. Amax Coal Co., Inc.*, 466 N.E.2d 369, 373 (Ill. App. Ct. 1984), and cannot be correct.

In sum, the three defenses raised by the Wexford defendants are not persuasive because each relies on the defendants' flawed characterization of Heard's constitutional claim. And since these defendants have yet to deny Heard's allegations or assert that he does not state a claim for deliberate indifference, our rejection of their defenses means that this action must be remanded for proceedings on the merits against Wexford and Dr. Tilden.

Heard next challenges the dismissal at screening of Dr. Shicker, the Department's medical director. The district court concluded that Heard was suing Dr. Shicker in his offi-

cial capacity, apparently because Heard's amended complaint alleges that Dr. Shicker instigated a policy of treating hernia surgeries as purely elective procedures. That reading of Heard's complaint is mistaken.

The amended complaint is explicit that Dr. Shicker "is culpable in his individual capacity," not only because he allegedly was the author of the "elective surgery" policy, but also because he did not "act to stop the delay despite his actual knowledge that the delay was causing" Heard to suffer pain. The latter allegation that Dr. Shicker was involved directly in the choice to stall necessary surgery and prolong Heard's pain is enough to state a claim. *See Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (explaining that "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference"); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (ten month delay in providing medication for rheumatoid arthritis stated claim for deliberate indifference); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (same for three month delay in scheduling tooth extraction). Moreover, contrary to the district court's reasoning, Dr. Shicker's further involvement as a policy maker does not insulate him from personal liability for his *own* actions, even when making and enforcing policy. *See Hafer v. Melo*, 502 U.S 21, 27 (1991) (rejecting view that "state officials may not be held liable in their personal capacity for actions they take in their official capacity"); *Duane v. Lane*, 959 F.2d 673, 675 n.1 (7th Cir. 1992). As the district court recognized, it would not serve Heard to attribute Dr. Shicker's policy decisions to the Department of Corrections, since doing so would constitute an official-capacity theory that would not state a claim against the Department. *See Will*, 491 U.S. at 71 (holding that

"neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 926 (7th Cir. 2012). Heard is not trying to hold the Department accountable for Dr. Shicker's actions, however, so *Will* is not a concern.

The judgment in favor of Dr. Shicker, Wexford, and Dr. Tilden is VACATED, and the case is remanded for further proceedings consistent with this opinion. We express no view about the merits of Heard's claim of deliberate indifference as to any of these defendants but recommend that the district court consider appointing counsel to represent Heard in this action. The judgment is AFFIRMED with respect to the dismissal of Dr. Funk.