NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2018[*]
Decided June 7, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-3025

| | |
|---|---|
| SUSAN GRUND, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:16-cv-00096-TWP-MJD |
| JULIE MURPHY, et al., | |
| *Defendants-Appellees.* | Tanya Walton Pratt, *Judge*. |

**O R D E R**

Susan Grund, who is incarcerated in Indiana, suffers from breast pain related to silicone implants. She sued Corizon Healthcare Services (the prison's healthcare provider), as well as a doctor and a nurse, alleging that they have been deliberately

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

indifferent to her pain and other symptoms in violation of the Eighth Amendment. The district judge entered summary judgment for all defendants. We affirm.

We review the record in the light most favorable to Grund. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Grund had silicone breast implants (apparently following cancer surgery) long before she started serving her prison sentence in the 1990s. In 2002 she began complaining of breast pain. When the prison healthcare system proved incapable of addressing her pain, Grund engaged an attorney to negotiate with the Department of Correction for a referral to specialized care. An MRI in 2003 showed that one of Grund's implants had ruptured. After protracted litigation, she was sent to a plastic surgeon, who removed and replaced her implants in 2010.

Grund began experiencing breast pain again sometime in 2012. In 2013 she saw Dr. Hinchman, the prison gynecologist, and complained of "lateral" breast discomfort and a tightening sensation. Dr. Hinchman performed a physical examination and found no abnormalities, so he told her she did not need to see a specialist or undergo further testing. A routine mammogram a year later showed normal results.

Dr. Hinchman examined Grund again in July 2015, and he noted her continued complaints of breast pain. He recorded that Grund complained of a dull, achy pain in both breasts that had persisted for years. But he also reported that the pain did not prevent her from doing daily activities. Grund disputes this, saying that Dr. Hinchman asked only whether the pain prevented her from showering, which it did not, but that she told him the pain *did* prevent her from exercising, doing some prison work, and sleeping. After a physical examination, Dr. Hinchman again found no abnormalities and determined that her implants were in place and symmetrical. He concluded that Grund's breasts should be monitored with monthly self-breast exams, yearly physicals, and annual bilateral mammograms. He did not prescribe any pain medication and attests that his "objective findings did not corroborate [Grund's] reported symptoms."

In addition to these examinations, Grund also underwent a blood test in 2015 that indicated high levels of antinuclear antibodies ("ANAs"), which she asserts shows that her body is rejecting a foreign substance like silicone. Dr. Hinchman responds that Grund's positive ANA screen suggests that she has an autoimmune disorder and avers that this interpretation is supported by Grund's diagnosis of celiac disease. Moreover, this diagnosis explains her past complaints of weight loss, fatigue, and gastrointestinal issues.

Grund also regularly complained of breast pain to Nurse Julie Murphy. The nurse did not make treatment decisions, however. Rather, she responded to Grund's complaints by forwarding them to the prison doctors.

In January 2016 Grund sued Dr. Hinchman, Nurse Murphy, and Corizon under 42 U.S.C. § 1983 alleging inadequate treatment of pain associated with her breast implants. She asked the district judge to recruit counsel to assist her. The judge granted Grund's motion and for three months tried to find a volunteer attorney but to no avail. Grund later renewed her motion, but the judge denied it, saying Grund was competent to litigate her case and there were not "enough lawyers willing and qualified to accept a pro bono assignment in every pro se case."

The defendants moved for summary judgment, supported by affidavits from Dr. Hinchman, Nurse Murphy, and an outside medical expert. Grund responded, submitting (among other things) her own affidavits in support. The judge granted the motion based in part on the statute of limitations and also because Grund lacked evidentiary support for her claim. First, applying the two-year limitations period for § 1983 suits in Indiana, *see Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (citing IND. CODE § 34-11-2-4), the judge held that Grund's claim was untimely to the extent that it rested on Dr. Hinchman's conduct occurring before January 2014. On the merits the judge held that the evidentiary record did not show that Dr. Hinchman was deliberately indifferent to Grund's medical needs or that Nurse Murphy was responsible for (or had even made) any treatment decisions. Finally, the judge found no basis for holding Corizon liable under § 1983.

Taking the timeliness question first, we note that Dr. Hinchman's conduct before January 2014 would drop out of the case only if Grund's suit rests on discrete episodes of alleged deliberate indifference. But if Grund's claim is properly understood as alleging one ongoing instance of deliberate indifference to her continuing pain, then there is no timeliness problem. Dr. Hinchman last examined her in July 2015, and for ongoing allegations the statute of limitations for an Eighth Amendment claim runs "from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). A violation is continuing "where it would be unreasonable to require or even permit a prisoner to sue separately over every incident of the defendant's unlawful conduct." *Id.* (internal quotation marks and brackets omitted). In medical cases "every day that the defendants improperly refuse[] to treat [the] condition potentially constitute[s] a new act of deliberate indifference." *Heard*

*v. Tilden*, 809 F.3d 974, 979 (7th Cir. 2016). We do not need to decide the timeliness question, however, because there is simply no evidence of deliberate indifference here.

Grund argues that factual disputes preclude summary judgment because Dr. Hinchman's failure to refer her to a specialist or order a new MRI is evidence of deliberate indifference. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference … ." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). To warrant a trial, Grund must present evidence that her medical condition was objectively serious and that the defendants knew of and disregarded an excessive risk to her health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

The defendants do not dispute that Grund's breast pain amounts to an objectively serious medical condition; instead they focus on whether their actions reflected deliberate indifference. On this record they did not.

"To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Dr. Hinchman maintains that his treatment of Grund was "reasonable, appropriate, and within the standard of care" in these circumstances; the affidavit from the outside medical expert supports his position. The expert witness—a plastic surgeon with "extensive experience in breast augmentation with implants, breast mastopexy, breast reductions, and breast reconstruction"—averred that: (1) "the best way to evaluate breast implants" is with physical exams; (2) "the standard of care does not require routine MRIs" after implant surgery; and (3) "there is no requirement that a patient undergo any type of regularly[] scheduled monitoring of breast implants." This evidence, along with Dr. Hinchman's history of examining Grund and responding to her complaints, shows that he exercised professional judgment in determining how best to monitor her for complications with her implants. The choice not to order an MRI or refer a patient for other "forms of treatment is … a classic example of a matter for medical judgment. A medical decision not to order [diagnostic testing] … does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014).

   That Grund disagrees with Dr. Hinchman about the cause of her breast pain and the significance of her positive ANAs screen cannot establish deliberate indifference. She has no right to her preferred course of treatment. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). A prisoner "is entitled to reasonable measures" to prevent a serious risk of harm, but she "is not entitled to the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). And on this record a jury could not reasonably conclude that Dr. Hinchman did not provide adequate care.

   Grund also argues that Nurse Murphy and Corizon acted with deliberate indifference to Grund's serious medical needs. But it is undisputed that Murphy did not make treatment decisions for Grund, and she cannot be held liable for constitutional deprivations for which she is not personally responsible. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). As for Corizon, Dr. Hinchman and Nurse Murphy both attested that no corporate policy prevented Grund from having an MRI or seeing a specialist. Because an official policy was not "the 'moving force' behind the deprivation of [Grund's] constitutional rights," the judge correctly entered summary judgment for Corizon. *Teesdale v. City of Chicago*, 690 F.3d 829, 833–34 (7th Cir. 2012); *see Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 109 (2017).

   Finally, Grund argues that the judge should not have required her to proceed pro se after granting her request for counsel. But the judge could not find an attorney willing and qualified to accept her case pro bono, and of course no civil litigant has the right to such assistance. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Allowing a litigant to proceed pro se when the court has made a reasonable effort to find a volunteer attorney is not an abuse of discretion as long as the litigant is adjudged competent. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc); *Henderson v. Ghosh*, 755 F.3d 559, 564–65 (7th Cir. 2014).

                                                                                                   AFFIRMED.