## Lucien I. Yeomans, Plaintiff in Error, v. Charles A. Brown, Defendant in Error.

### Gen. No. 29,975.

1. CONTRACTS—*sufficiency of evidence to establish agreement by defendant to advance funds for re-establishment of corporation.* In an action for damages resulting from the breach by defendant of an alleged agreement with plaintiff and other stockholders of a corporation, wherein defendant undertook to take over and operate the affairs of such corporation for a certain period, advance the necessary money to save it from bankruptcy, and restore it to them when it was put on a paying basis, held that the court was warranted in directing a verdict for defendant upon the ground that the evidence failed to show an agreement by defendant to advance funds in the amount or for the purposes alleged except as in his judgment it was expedient to do so.

2. EVIDENCE—*evidence admissible to establish agreement by defendant to advance funds for financial re-establishment of corporation.* In an action for damages for the breach by defendant of an alleged agreement with plaintiff and other stockholders of a corporation, wherein defendant undertook to advance funds sufficient to save the corporation from bankruptcy, it was not error to exclude testimony by plaintiff relative to an alleged conversation with a third person, not in defendant's presence, touching the amounts of money defendant had paid out or was going to pay out for the benefit of the corporation, such evidence being immaterial to any issue in the case.

FITCH, J., dissenting.

Error by plaintiff to the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Affirmed. Opinion filed December 8, 1925.

MONTGOMERY, HART & SMITH, for plaintiff in error.

LITSINGER, HEALY & REID, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

At the conclusion of plaintiff's evidence on the trial of an assumpsit suit, the court directed the jury to return a verdict for the defendant, and a judgment against plaintiff followed, which by this writ he seeks to reverse.

One of the grounds stated by the court for directing the verdict was that the evidence "does not sustain the allegations of the declaration." Plaintiff's one special count charged in substance that on July 1, 1921, in consideration that plaintiff, as owner of certain shares of stock of the American Metal Products Company (an Illinois corporation and hereinafter referred to as the Products Co.) and all other stockholders, would transfer to a trustee to be named by defendant all of the stock, to be held in trust for three years and voted as defendant might direct, and also that plaintiff and all stockholders would consent to a moratorium for a like period as to the indebtedness due them from the company, unless defendant sooner put the company "upon a satisfactory paying basis," defendant *undertook and promised* that he would operate the company for said period and "advance to it the money necessary to carry out his plans and *save said company from bankruptcy*"; that although plaintiff and all other stockholders performed their part of the undertaking, defendant refused to perform his part and "failed to advance to the company moneys sufficient to pay its creditors," and, on the contrary "assisted" the creditors to put the company into bankruptcy on August 2, 1921; and that by reason of the foregoing "plaintiff *became* liable to William D. Gibson Co., a corporation, *on his*

*endorsements* on notes'' of the Products Co., given to said Gibson Co. prior to June 29, 1921, and which notes became due on August 8, 1921, to plaintiff's damage in the sum of $3,000. In plaintiff's affidavit of claim, accompanying the declaration, is the statement that his demand is ''for damages sustained'' by him as indorser on said notes, ''which the defendant *agreed to pay.*''

It thus clearly appears that the theory of plaintiff's alleged claim is that defendant, for the considerations mentioned, agreed to advance the moneys necessary to save the Products Co. from bankruptcy and to pay the said notes which plaintiff individually had indorsed.

To the declaration defendant filed a plea of the general issue and a plea of the statute of frauds. In his affidavit of defense he states that he never agreed to pay the notes and never promised to advance to the Products Co. moneys necessary to carry out any plans or to save that company from bankruptcy.

On the trial plaintiff introduced in evidence a certain letter addressed to him individually, signed by defendant and dated June 29, 1921, in which is contained the following proposal:

''I propose to have all the stock put in trust for three years, say, if I need to carry it on that long. At the end of this period, or earlier if I get it upon a satisfactory paying basis, I shall terminate the trust arrangement and restore the stock to the stockholders. In the meantime, I am to have a perfectly free hand. *All debts to the company must be paid at once.* All debts owing by the company to stockholders will be subject to a moratorium. I propose to put in the money absolutely required to carry out the plans which I have outlined above. The general spirit of this arrangement is, that to avoid imminent bankruptcy, I take over the business with an absolutely free hand with the *expectation* of gradually putting it on its feet, and when I have done so, *if I succeed,* I

shall turn it back to the stockholders. I shall not undertake this unless it is with the cheerful co-operation of *all* who are interested.   *   *   *   No one risks anything in the enterprise upon which I am embarking except myself.''

Plaintiff claimed on the trial that defendant's proposal was accepted (thereby becoming a contract) in a letter which he on the following day, June 30, sent to defendant, in part as follows:

''Replying to your proposition of June 29th,—I express the feeling of Mr. Winslow and Miss O'Hara, as well as my own, in saying that we believe the plan proposed by you is one that insures the ultimate success of the Products Co.   *   *   *   We are assuming that the entire plan will receive the equally hearty approval of Mr. Buchanan, and are led to think such is the case, not only from our conversation with your representative but from his own remarks at the stockholders' meeting on the 27th. We have not been able to get in touch with him, and *to a certain extent our unqualified agreement with your plan is subject to his approval.''*

It thus appears on the face of plaintiff's letter that defendant's proposal was not unqualifiedly accepted. Plaintiff's evidence also showed that subsequently further negotiations were had between defendant and plaintiff and other stockholders of the Products Co. resulting in the signing of a certain agreement (bearing date June 30, 1921) by all of said stockholders, except two, wherein they ''trusteed'' their stock under certain conditions.

This agreement, although *not signed* by defendant, was, for a period of about one month, acted upon by him and by the stockholders. It contained recitals that the Products Co. was in financial difficulties; that Charles A. Brown (defendant) ''is willing to undertake the financing of the company, *so far as in his judgment may be deemed advisable,* upon condition that its capital stock, or so much thereof as he may demand,

be transferred in trust to such person or persons as he may designate, and upon conditions *satisfactory to him"*; and that said Brown has designated Alexander C. Mabee to act as trustee, who hereby acknowledges the transfer to him, as trustee, "of the following blocks of the capital stock of said corporation by the persons indicated, all of whom by their signatures hereto acknowledge and *agree to all the terms and conditions hereof.*" Then follows a list of names and the number of shares held by each, viz., Lucien I. Yeomans (plaintiff) 1,266 shares, D. W. Buchanan 2,494 shares, D. W. Buchanan for M. E. O'Hara 866 shares, and Paul Winslow and W. P. MacCracken, Jr., one share each. It is then agreed that the trustee shall hold said shares for a period of three years "unless sooner requested by Charles A. Brown to reconvey them to the *cestui que trust.*" Then follow provisions as to the power and duties of the trustee, and it is provided that the trustee assumes no responsibility for errors of judgment, nor for complying with any request of Charles A. Brown. It is further provided that said Brown "shall not be held responsible by *any* of said stockholders for any error of judgment but only for deliberate fraud"; and there are provisions for the appointment by Brown of another trustee in case he should desire it or in case of Mabee's death or resignation, and that at the end of the three-year period the trustee *shall* retransfer the stock back to the *cestui que trust.*

Plaintiff's evidence, oral and documentary, further disclosed certain facts, leading up to the signing of the agreement, in substance as follows: In addition to the stockholders (including plaintiff) who signed that agreement, defendant and one W. H. Winslow were stockholders in the Products Co. Plaintiff was its president, Miss M. E. O'Hara its secretary and Paul Winslow its treasurer. The company had actively been engaged in business but was financially embarrassed.

Among its bills payable were its two notes, each for about $900, dated June 24, 1921, and payable to the order of the Gibson Co. in 30 and 45 days respectively. Each bore the individual indorsements of plaintiff, Paul Winslow and Miss O'Hara. A special meeting of the stockholders was held on June 27, 1921, at which plaintiff, defendant, D. W. Buchanan, and other stockholders were present. It appeared that $30,000 would have to be raised to meet the company's pressing obligations. Upon plaintiff's inquiry, all present expressed themselves as unwilling to render further financial assistance by way of loans, subscriptions to stock or otherwise. Plaintiff, as president, then stated that he saw no way to avoid bankruptcy except by selling its tangible assets, and expressed the opinion that he could make such a sale for about $75,000, with a contract with the purchaser whereby the company might continue manufacturing and selling its products, and thereby funds would be available to weather the storm. D. W. Buchanan, the largest stockholder, and defendant each stated that they did not favor such a sale, the same was not consented to, and the meeting adjourned with the understanding that the directors and officers find another way out of the dilemma. Shortly thereafter plaintiff and defendant had an interview concerning the situation, which resulted in defendant making his written proposal to plaintiff of June 29, above mentioned. On July 29, 1921, about one month after the signing of the agreement and during which period defendant and the trustee had been acting thereunder, defendant wrote plaintiff in part as follows:

"After a month of effort, and owing principally to the impossibility of getting certain of the creditors of the Products Co. to take their places in line, I can see that it is not going to be possible to avoid bankruptcy, and I, therefore, shall approve canceling the trust arrangement and returning the stock to the stockholders.

I offered to the creditors, if they agreed to the plan, that I would postpone my claim and Mr. Winslow's until the other claims were paid. · * * * In addition, I undertook to put money in to keep the concern going, providing no one upset the arrangement by putting the concern in bankruptcy. Most of the creditors accepted this most favorable offer, but a few, of whom Wallace was one, were irreconcilable. Suit has been begun, and I think bankruptcy is inevitable. * * * *The accounts receivable were largely uncollectible.* Assets valued at over $30,000,—enough practically to pay all debts of the company, except those to Mr. Winslow and me,—became unavailable. However, the real reason for not continuing the effort is the unwillingness of the creditors to stand in line.''

To this letter plaintiff replied on the following day, expressing surprise, calling attention to certain statements in defendant's proposal letter of June 29, and concluding:

"However, if you desire to terminate the arrangement, I assume that the fair thing to do is, to call a meeting at which all the stockholders can be present, except W. H. Winslow, and put the proposition up to them. I understand that Mr. Buchanan is temporarily out of the city and would suggest that the meeting be set for Wednesday or Thursday of next week.''

It does not appear what action, if any, was taken at that meeting. Plaintiff's evidence further disclosed that on August 2, 1921, a petition in bankruptcy was filed against the company; that the attorney who filed such petition obtained a list of its creditors, after a call on defendant, from either Mabee or Winslow; that more than a year later, on October 31, 1922, judgments were entered in favor of the Gibson Co. against plaintiff and Miss O'Hara, as indorsers on the notes above mentioned; that part of the amount due on the notes was paid out of the bankrupt estate; and that plaintiff had paid about $900 on the judgments rendered against him. There was no evidence tending to show that de-

fendant "assisted" in putting the company into bankruptcy, as charged.

After reviewing plaintiff's evidence, we are of the opinion that the trial court was amply justified in instructing the jury to return a verdict for the defendant, in that the evidence did not show that defendant promised or agreed to advance the moneys necessary to save the Products Co. from bankruptcy, or promised or agreed to pay the notes on which plaintiff was liable as an indorser. Plaintiff's counsel here argue that defendant's written proposal of June 29, 1921, is evidence of such promises or agreements, but even in that proposal defendant does not agree to pay said notes, and, furthermore, it clearly appears that said proposal was not accepted, and that further negotiations were had, resulting in the signing of the trust agreement, which for a short time was acted upon by defendant and all concerned. Nowhere in the agreement does defendant promise that he will pay said notes. And, as regards defendant advancing moneys to the Products Co., there are recitals therein that defendant "is willing to undertake the financing of the company, so far as *in his judgment* may be deemed advisable," in consideration of the stock of the company being transferred to a trustee to be designated by him, and "upon conditions *satisfactory to him.*" This shows the clear intent of all parties to the agreement, including plaintiff, namely, that defendant's judgment as to the amount of money he would advance is to govern. (*Goodrich v. Van Nortwick,* 43 Ill. 445, 446; *Kendall v. West,* 196 Ill. 221, 225; *Temby v. William Brunt Pottery Co.,* 229 Ill. 540, 544.) While it is true that recitals "are not strictly any part of the contract," it is also true that they "may have a material influence on the construction of the instrument and the determination of the intent of the parties." (13 Corpus Juris, P. 538, sec. 502; *Burr v. American Spiral Spring Butt Co.,* 81 N. Y. 175, 178.) Furthermore, it does not

appear even from the language of defendant's preliminary proposal that he agreed to pay out of his own pocket all the debts of the company. He states that "all debts *to* the company must be paid" and that he will enter into the arrangement proposed by him with the "expectation" of gradually putting the company upon its feet, and that, *if he succeeds,* he will turn the business back to the stockholders. His letter to plaintiff of July 29, introduced by plaintiff, gives reasons why *in his judgment* the trust agreement should be terminated at once, for he says that "the accounts receivable were largely uncollectible," and that "assets valued at over $30,000 * * * became unavailable." Furthermore, as to the evident intent of the parties to the agreement, there is no provision therein relative to defendant being *repaid* for payments of debts of the company. If the intention were that he individually should pay all claims against the company, in order to save it from bankruptcy, there doubtless would have been some provision relative to his being reimbursed. Furthermore, there was no evidence tending to show that, even if Brown had succeeded in his efforts to keep the company out of bankruptcy, plaintiff would have been released from his obligation as indorser on the notes held by the Gibson Co., which he had entered into prior to the making of the trust agreement. Of course, defendant might have paid the notes, but this he never agreed to do. Plaintiff's counsel argue that plaintiff, when the agreement was made, was in a position to protect his indorsements on the notes by causing a sale of the tangible assets of the company, with an arrangement with the purchaser that the business of the company might be continued, and by paying said notes from the proceeds realized from such sale, and that defendant induced him to forego this probability by promising to operate the business of the company for the period mentioned and to advance money, etc. But the evidence shows that plain-

tiff could not have sold said tangible assets, even if he had found such a purchaser, for, at the stockholders' meeting held on June 27, the holders of a majority of the stock expressed themselves as not favoring such a sale, and plaintiff's suggestion, then made, was not followed.

Another of the grounds stated by the court for directing the verdict was that the evidence did not show any agreement, or memorandum or note, in writing, signed by defendant, or his duly authorized agent, whereby defendant guaranteed or became liable to pay any of the debts of the Products Co. And plaintiff's counsel contend that "a mere arrangement between a promisor and a promisee, though it relate to a debt of another, is not within the statute of frauds." In the view we take of this case, as above shown, we deem a discussion of the contention to be unnecessary.

During the trial, on defendant's objection, the court refused to permit plaintiff to testify as to a conversation, not in defendant's presence, which plaintiff testified he had with Mabee, the trustee named in the trust agreement, after the signing of the same, as to the amount of money defendant had paid out, or was going to pay out, for the company. We do not think that any prejudicial error was committed by the court in this ruling, nor in other rulings wherein the court refused to admit certain other offered testimony, which was immaterial under the issues as framed.

Our conclusion is that the judgment of the superior court should be affirmed and it is so ordered.

*Affirmed.*

BARNES, P. J., concurs; FITCH, J., dissents.