No. 1-01-3539 FIRST DIVISION

March 17, 2003

FIRST BANK AND TRUST COMPANY OF ILLINOIS, ) Appeal from the Circuit

as Trustee u/t/a dated March 28, 2000, and Known as ) Court of Cook County,

Trust No. 10-2377; FIRST BANK AND TRUST ) Illinois, Chancery Division.

COMPANY OF ILLINOIS, as Trustee u/t/a dated )

April 11, 2000, and Known as Trusts No. 10-2395 and )

No. 10-2396; and GLENBROOK DEVELOPMENT OF )

NML, L.L.C., an Illinois Limited Liability Company, ) 

) 

Plaintiffs-Appellants, ) No. 00 CH 17270

) 

v. ) 

   )

THE VILLAGE OF ORLAND HILLS, ) The Honorable

) Nancy J. Arnold,

Defendant-Appellee. ) Judge Presiding. 

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs-appellants First Bank and Trust Company of Illinois, as trustee under trust agreement dated March 28, 2000, and as trustee under trust agreement dated April 11, 2000, and Glenbrook Development of NML (collectively Glenbrook, or as named) appeal from the trial court's order granting defendant-appellee Village of Orland Hills' (Orland Hills) motion to dismiss with prejudice.  Glenbrook asks that we reverse the court's dismissal of its complaint and enter judgment in its favor or, alternatively, that we reverse and remand this cause for further proceedings.  For the following reasons, we affirm.

BACKGROUND

This cause involves property located at 171st Street and LaGrange Road, which was divided into lots 1, 2, 3 and 4.  A&M Limited Partnership (A&M) was the original owner and Formula Outdoor, Inc. (Formula), was the original developer of the property.
(footnote: 1)  On November 3, 1999, Orland Hills entered into an annexation agreement with A&M and Formula for the property, binding these parties and their successors in interest.  Under the annexation agreement, Orland Hills is responsible for extending all water service to the property.  In addition, section 7 of the agreement states, in pertinent part:

"
SECTION 7:
 
Disconnection.
 ***  After closing developer may petition to disconnect on or before December 30, 2000 and [Orland Hills] will grant such petition."

Citizens Utilities Company of Illinois (Citizens) provided water service to Orland Hills, as well as to other neighboring cities, such as the Village of Tinley Park (Tinley Park).  Soon after Orland Hills entered into the annexation agreement, it sought to have Citizens extend water service to the property.  Citizens and Tinley Park were opposed to this extension.  Orland Hills filed a complaint for declaratory judgment against Citizens and Tinley Park, seeking a declaration that Citizens be obligated to provide water to the property (the Citizens litigation).
(footnote: 2)
 Meanwhile, Tinley Park filed a motion for preliminary injunction to contest the validity of Orland Hills' annexation of the property.  During a hearing conducted on January 24, 2000, Formula's president, Douglas Engberg, testified with respect to the annexation agreement.  He stated that Formula had contracted to buy the property from A&M and that, once ownership was transferred, Formula planned to sell a portion of the property (lots 2, 4 and part of 1) to Glenbrook.  Engberg also testified that Formula and Orland Hills had entered into an amendment to the annexation agreement affecting Formula's right, as developer, to petition for disconnection of the property.  Engberg averred that the amendment, once finalized, would eliminate the language in the annexation agreement with respect to the right to disconnect.  Engberg testified that, instead, the right to disconnect would be dependent upon the resolution of the Citizens litigation; if Orland Hills were victorious, the disconnection right could not be exercised.  At the close of the hearing, Tinley Park's motion was denied and summary judgment was entered in favor of Orland Hills.
(footnote: 3)
 On February 9, 2000, A&M completed its sale of the property to Formula, which was now both owner and developer.  On that same date, Orland Hills and Formula finalized their amendment to the annexation agreement.  The amendment contains five recitals, A through E.  Recital A refers to the original annexation agreement.  Recital B refers to the then-pending Citizens litigation and Orland Hills' efforts to effect a judicial declaration that Citizens is obligated to provide water to the property.  Recital C cites that language in the annexation agreement (section 7) that gave the developer the right to disconnect on or before December 30, 2000.  Recital D states that the parties "acknowledge that the reason for granting a right of disconnection is directly related to the possibility that Citizens be found not obligated to service the *** property with water."  Recital E concludes that if Orland Hills were to prevail in the Citizens litigation, thereby obligating Citizens to provide water to the property by final court order, then Orland Hills would immediately proceed with any construction for water service and the owner and developer would waive their right to disconnect.  The body of the amendment binding the parties and their successors in interest states:

"That upon entry of a final order in [the Citizens litigation] *** declaring that [Citizens] is obligated to provide water service to the property which is the subject matter of this Annexation Agreement and Amendment thereto, Owner and Developer agree to release and waive their right to disconnect from [Orland Hills].   Developer and Orland Hills will immediately do all things necessary to initiate and complete the construction of the necessary infrastructure to bring sewer and water to the lot line of the *** property."

At some point thereafter, Orland Hills and Formula signed a letter of interpretation (Letter) comprised of three numbered paragraphs discussing the amendment and the right to disconnect.  Paragraph one states that the December 30, 2000, disconnection date in the original annexation agreement was designed to accommodate the possibility that Orland Hills would not be able to provide water to the property.  Paragraph two states that the purpose of the amendment "is to eliminate the December 30, 2000 deadline and relate the Developer's right to disconnect to final adjudication of the issues pending in" the Citizens litigation.  Finally, paragraph three states that by executing the amendment, the parties thereto intend to "measure" the right to disconnect only by the results of the Citizens litigation and not by any specific date, leaving the developer with the ability to exercise his right to disconnect only if Orland Hills were to lose that litigation.

On April 4, 2000, after the amendment to the annexation agreement was executed and after the Letter was signed by Orland Hills and Formula, Formula sold a portion of the property (lots 2, 4 and part of 1) to First Bank and Trust Company, as trustee of trust number 10-2377, which in turn conveyed separate parts of this portion of the property to trust number 10-2395 and trust number 10-2396.  By these conveyances, Glenbrook Development became the successor developer of this portion of the property.  

On May 25, 2000, Glenbrook petitioned Orland Hills to disconnect its portion of the property, citing the annexation agreement and noting that it was exercising its right to disconnect before the December 30, 2000, deadline.  Orland Hills denied Glenbrook's petition.  Glenbrook filed a complaint against Orland Hills, asking the trial court to order Orland Hills to grant its petition to disconnect.  In response, Orland Hills moved to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1998)) (Code), asserting that under the amendment, Glenbrook's right to disconnect was dependent upon the outcome of the pending Citizens litigation.  

The trial court granted Orland Hills' motion with prejudice, finding that there were no genuine issues of material fact precluding it from ruling on the interpretation of the annexation agreement and the amendment.  The court found that these documents were unambiguous and that it was clear that the amendment modified the original annexation agreement by "extend[ing] the time to disconnect further, not to a specific date but until a specific event occurs," namely, a resolution of the Citizens litigation that is adverse to Orland Hills.  The court concluded that these documents were "susceptible to no other meaning."  

ANALYSIS

Glenbrook appeals the trial court's grant of Orland Hills' section 2-619 motion to dismiss.  We review an appeal from the grant of a section 2-619 motion on a 
de novo
 basis in order to determine whether the trial court correctly found no genuine issue of material fact existed and judgment as a matter of law was proper.  See 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993); accord 
Spirit of Excellence, Ltd. v. Intercargo Insurance Co.
, 334 Ill. App. 3d 136, 145, 777 N.E.2d 660, 668 (2002)
.  Dismissing a cause pursuant to section 2-619 of the Code allows for the disposal of issues of law or easily proved facts early in the litigation process.  See 
Coles-Moultrie Electric Cooperative v. City of Sullivan
, 304 Ill. App. 3d 153, 158, 709 N.E.2d 249, 252 (1999).

On appeal, Glenbrook makes two contentions of error on the part of the trial court.  First, Glenbrook contends that the court improperly construed the amendment, because the amendment did not replace section 7 of the annexation agreement (Agreement) but, rather, only added a condition to Glenbrook's right to disconnect.  Glenbrook claims that the plain language of these documents grants it the right to disconnect (1) if it files its petition on or before December 30, 2000, and (2) if it files its petition before entry of an order in the Citizens litigation obligating Citizens to provide water to the property.  Second, Glenbrook contends that the trial court erroneously relied on certain extrinsic evidence in construing the Agreement and amendment.  We disagree with both contentions.  We address first Glenbrook's arguments with respect to the trial court's interpretation of the documents at issue.

The principle objective in construing an agreement is to give effect to the intent the parties possessed at the time they entered into that agreement.  See 
Pennsylvania Life Insurance Co. v. Pavlick
, 265 Ill. App. 3d 526, 529, 637 N.E.2d 1160, 1162 (1994)
; accord 
USG Corp. v. Sterling Plumbing Group, Inc.
, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70 (1993).  When the agreement's provisions are unambiguous, we are to ascertain the parties' intent from the language of the agreement.  See 
Coles-Moultrie Electric
, 304 Ill. App. 3d at 159, 709 N.E.2d at 253; 
Pennsylvania Life Insurance
, 265 Ill. App. 3d at 529, 637 N.E.2d at 1162.  The agreement is to be construed as a whole, giving meaning and effect to every provision when possible.  See 
Coles-Moultrie Electric
, 304 Ill. App. 3d at 159, 709 N.E.2d at 253.  When parties agree to and insert provisions into their agreement, we presume that this is done purposefully and that the language employed is to be given effect.  See 
Coles-Moultrie Electric
, 304 Ill. App. 3d at 159, 709 N.E.2d at 253 ("[i]t is presumed the provisions are purposefully inserted and the language is not employed idly").  A court will not interpret an agreement in a way that would nullify its provisions or render them meaningless.  See 
Coles-Moultrie Electric
, 304 Ill. App. 3d at 159, 709 N.E.2d at 253 (courts are to interpret contracts so as not to render provisions meaningless or of surplus); accord 
USG Corp.
, 247 Ill. App. 3d at 320, 617 N.E.2d at 71-72.

We agree with the trial court, as well as with both Glenbrook and Orland Hills on appeal, that the language of the Agreement and amendment is clear and unambiguous.  See 
USG Corp.
, 247 Ill. App. 3d at 318, 617 N.E.2d at 71 (mere fact that parties do not agree on documents' interpretation does not create an ambiguity).  Moreover, we find that the trial court properly accepted Orland Hills' interpretation as the meaning of the Agreement and amendment intended by the signatories at the time they were entered into.  

Initially, owner A&M and developer Formula sought to have their property annexed to the Village of Orland Hills.  They entered into the Agreement with Orland Hills to annex the property, and one responsibility assumed by Orland Hills thereunder was the extension of water service to the property.  At this time, A&M, Formula and Orland Hills agreed that Formula would have a right to disconnect tied to a date certain: December 30, 2000.  That is, based on the circumstances as they existed at the time these parties signed the Agreement, Formula was given the right to disconnect if it petitioned to do so on or before December 30, 2000.  

The language of the amendment, however, exhibits a different intent surrounding the right to disconnect at the time it was entered into, three months after the formation of the Agreement.   A&M had sold its interest to Formula, making it both the owner and developer.  This left only Formula, Glenbrook's predecessor in interest, and Orland Hills as parties to the Agreement.  Water service for the project was now in jeopardy, as Citizens refused to extend its existing service in the Village of Orland Hills to the newly annexed property.  Therefore, Orland Hills began the Citizens litigation.  At this time, Formula and Orland Hills drafted and signed the amendment.  As noted above, the body of the amendment provides a reference to the Agreement and states that, if a final order is entered in the Citizens litigation obligating Citizens to provide water to the property, Formula will release and waive its right to disconnect.  The intent of the parties at the time they entered into this amendment is clear from the plain language of the body of the amendment.  As its words express, the amendment's purpose was to now tie Formula's right to disconnect to an event, namely, the resolution of the Citizens litigation which was pending at that time.  No date certain, such as December 30, 2000, was included in the amendment because it was unclear to either party at this point in time when the Citizens litigation would be resolved.  The language also shows Formula's desire to remain a part of the project as long as Orland Hills could meet its responsibility to provide water to the property.  After stating that Formula will release and waive its disconnection right upon Orland Hills' success in the Citizens litigation, the second sentence of the body of the amendment states that, if the litigation is resolved in Orland Hills' favor, Formula will "immediately do all things necessary" in conjunction with Orland Hills to initiate and complete water connection to the property.  By signing the amendment, Formula consciously changed the "trigger" of its ability to exercise its right to disconnect from a date certain to a time when, and if, Orland Hills was unsuccessful in the Citizens litigation.  

To interpret the language of the amendment as Glenbrook would have us do would render the amendment meaningless and nullify its operation.  Under Glenbrook's interpretation, Glenbrook would be able to disconnect at any time before December 30, 2000, without any regard to the Citizens litigation or its outcome.  This would defy the purpose of the amendment and Formula and Orland Hills' intent at the time of its execution.  To those signatories, the commencement of the Citizens litigation became central to their original Agreement and Formula's  right to disconnect, so much so that they executed the amendment changing the trigger of the ability to exercise that right from a date certain to the outcome of the litigation.   By allowing Glenbrook the ability to exercise its right to disconnect at any time before December 30, 2000, so long as no final order was entered in the Citizens litigation, Orland Hills would virtually receive no benefit from the amendment, thereby rendering it superfluous insofar as it was concerned.  Therefore, Glenbrook's interpretation is unsupported and we find that the trial court properly accepted Orland Hills' interpretation as the clear and unambiguous meaning of the Agreement and amendment.  See 
Coles-Moultrie Electric
, 304 Ill. App. 3d at 159, 709 N.E.2d at 253; 
USG Corp.
, 247 Ill. App. 3d at 320, 617 N.E.2d at 71-72.

Glenbrook asserts that the trial court's interpretation is erroneous because it leads to the "absurd result" of creating an indefinite disconnection right and because it ignores certain benefits to Orland Hills.  We disagree.  First, interpreting the amendment as making the exercise of the right to disconnect dependent on the outcome of the Citizens litigation rather than on a date certain does not lead to an absurd result or create an "indefinite" right.  Contrary to Glenbrook's contention, it does possess a right to disconnect.  The amendment simply affects the trigger of Glenbrook's ability to exercise that right.  This is what Orland Hills and Formula, Glenbrook's predecessor in interest, agreed to when they amended the Agreement; the developer will "release and waive [its] right to disconnect" if a final order is entered obligating Citizens to provide water to the annexed property.  Therefore, what has yet to be determined is not whether Glenbrook has the right to disconnect, but rather when it may exercise it.  If and when a final order is entered obligating Citizens to provide water, Glenbrook must "release and waive" its right to disconnect.  However, if and when a final order is entered not obligating Citizens to provide water, Glenbrook can exercise its right and disconnect the property.  There is nothing absurd with tying the exercise of this right to the outcome of the pending Citizens litigation.  

Moreover, we fail to understand Glenbrook's argument with respect to "benefits."  Glenbrook asserts that the trial court erred because its interpretation "failed to recognize that the plain language of the amendment conferred important benefits to Orland Hills."  Glenbrook claims that under its own interpretation, Orland Hills would benefit in two ways, namely, that "the time period for disconnection could be shortened if Orland Hills prevailed in the Citizens [l]itigation," and Orland Hills' "obligation to construct the infrastructure improvements to bring utilities to" the property would be "deferred" until after the resolution of the Citizens litigation, when Orland Hills would know for sure whether Citizens would be legally compelled to provide water service.  However, as for the first "benefit" of shortening the time period for disconnection, it is not clear that Orland Hills even intended this as a consequence in signing the amendment.  Rather, by tying the developer's exercise of its right to disconnect to the resolution of the Citizens litigation in the amendment, Orland Hills was not seeking to "shorten" the time period, but instead to secure the developer's participation in the project at least until Orland Hills proceeded through the Citizens litigation to a final resolution.  Shortening the time period was of no concern to Orland Hills; rather, the concern was to have a commitment from a developer while it incurred the time and expense of litigation against Citizens.  Thus, we fail to see how shortening the time for disconnection would be a "benefit" to Orland Hills, which was in the midst of a lawsuit involving an issue so central to the property as a water supply.  

Moreover, as for the second "benefit" Glenbrook cites with respect to a deferred obligation on the part of Orland Hills to construct the infrastructure on the property, we do not see how this would be a benefit to Orland Hills only under Glenbrook's interpretation of the amendment that the right to disconnect is tied to December 30, 2000.  To the contrary, in our view, this benefit to Orland Hills applies more so under the trial court's interpretation that exercise of the right to disconnect is tied to the outcome of the Citizens litigation.  The language of the amendment states that the developer cannot exercise its right to disconnect until and unless the Citizens litigation is resolved against Orland Hills.  The amendment also states that at the time of resolution, if Orland Hills is victorious, then the developer must aid it "to initiate and complete the construction of the necessary infrastructure."  Any obligation on the part of Orland Hills, then, to begin constructing the infrastructure at the property is deferred by the amendment until resolution of the Citizens litigation.  Glenbrook concedes as much in its brief on appeal.  Therefore, we do not understand its claim that this benefit of a deferral of Orland Hills' obligation is something that arises only under its interpretation and was a benefit ignored by the trial court resulting in reversible error. 

We now turn to Glenbrook's second contention on appeal.  Glenbrook asserts that the trial court erroneously considered three items of extrinsic evidence in construing the unambiguous language of the Agreement and amendment: (1) Engberg's testimony given at the hearing on Tinley Park's motion for preliminary injunction to stop Orland Hills from annexing the property, (2) the Letter signed by Engberg and Orland Hills after having executed the amendment, and (3) the recitals to the amendment.  Glenbrook also asserts error on the part of the trial court in citing and relying on the case of 
In re Estate of Constantine
, 305 Ill. App. 3d 256, 711 N.E.2d 1190 (1999), for the proposition that courts may view unambiguous contracts in light of the context in which they were formed.

We first note that Glenbrook's contention with respect to extrinsic evidence relied upon by the trial court in reaching its interpretation of the operational provisions of the Agreement and amendment is only correct as to the trial court's reference to the recitals.  The trial court never made any reference to Engberg's testimony in its colloquy, nor did it ever mention any portion of what occurred at the hearing on Tinley Park's motion for preliminary injunction.  Moreover, Glenbrook provides us with no citation to the record wherein the court stated that this was one of the factors it was considering in forming its interpretation of the Agreement and amendment, and our review of the trial court's analysis has discovered none.  The same can be said about the Letter signed by Engberg and Orland Hills after these parties executed the amendment.  The trial court did not make any reference to the Letter in its colloquy stating its interpretation of the Agreement and the amendment.  In fact, contrary to Glenbrook's contention, the record indicates that the court dismissed any consideration of the Letter.  When presented with the Letter by Orland Hills' attorney, the court noted that the Letter was not dated and asked the attorney if he believed it comprised part of the Agreement and amendment between the parties.  The attorney stated that it was not part of these documents which comprised the contractual relationship between the parties, and the court agreed.  Other than this exchange, the court did not mention the Letter as a factor in its decision.  

As for the recitals to the amendment, Glenbrook is correct in its statement that the recitals were not incorporated into the amendment or made operational by any language contained therein.  Glenbrook is also correct in its statement that the trial court mentioned the recitals in its colloquy, relying on 
Estate of Constantine
 for the proposition that it could view the Agreement and amendment in light of the contexts in which they were formed.  The court quoted some of the language used in the recitals and at one point stated that the only way Glenbrook's interpretation of the Agreement and amendment could exist is if one were to "ignore the recitals in paragraph c and d in the amendment" and "[t]his cannot be done."  However, contrary to Glenbrook's contention, we find that the trial court's mention of the recitals and its reliance on 
Estate of Constantine
 does not constitute error.

Recitals to a contract provide explanations of those circumstances surrounding the execution of the contract.  See 
Illinois Housing Development Authority v. M-Z Construction Corp.
, 110 Ill. App. 3d 129, 144, 441 N.E.2d 1179, 1189 (1982); accord 
Regnery v. Meyers
, 287 Ill. App. 3d 354, 360, 679 N.E.2d 74, 78 (1997).  Ordinarily, recitals are only preliminary in nature and will not, of themselves, be considered binding obligations on the parties or an effective part of their agreement unless referred to in the operative portion of their agreement.  See 
Regnery
, 287 Ill. App. 3d at 360, 679 N.E.2d at 78; 
Illinois Housing Development Authority
, 110 Ill. App. 3d at 144-45, 441 N.E.2d at 1189 (preliminary recitals in agreement of themselves are not binding unless referred to in operative portion agreement "as to show a design [that] they should form a part of it").  

As noted, the amendment in the instant case contained five recitals.  The amendment, however, did not contain any language in its preamble
 referring to the recitals or indicating that the amendment was to operate in relation to or in consideration of the recitals.  See 
Wilson v. Wilson
, 217 Ill. App. 3d 844, 852, 577 N.E.2d 1323, 1329 (1991) (recitals of themselves become operative when preamble to contract includes language indicating that contract is being formed in consideration of those recitals); 
American National Bank & Trust Co. of Chicago v. Chicago Title & Trust Co.
, 134 Ill. App. 3d 772, 776-77, 481 N.E.2d 71, 74 (1985) (recitals of themselves deemed operative when contract stated " '[f]or and in consideration of the premises set forth in the foregoing Recitals' ").  Despite this, the trial court here discussed the recitals in its colloquy, relying on 
Estate of Constantine
.  While the language of the amendment's preamble did not explicitly dictate the inclusion of the recitals, we believe the court's consideration of them was not erroneous.

The operational portion of the amendment (
i.e.
, its body) effectively repeats all the information contained in the five recitals.  For example, as noted earlier, recital A refers to the original Agreement between Formula and Orland Hills and the property affected by it, as does the body of the amendment.  Recital B refers to the pending Citizens litigation and the issue of whether Orland Hills could legally obligate Citizens to provide water to the property.  Again, the first sentence of the body of the amendment cites this same pending litigation.  Recital C merely refers to the developer's right to disconnect as stated in the Agreement.  This Agreement was already before the trial court as part of the contract between the parties, not as extrinsic evidence.  Recitals D and E state that the right of disconnection is to be related to the outcome of the Citizens litigation wherein, if Orland Hills were to prevail, the developer would waive its right to disconnect and construction for water service would immediately proceed.  Upon examining the language of the amendment, as we have already done, it is clear that the operative language in its body tracks the concepts in these last two recitals.  Therefore, although there was no explicit language in the preamble of the amendment giving effect to the recitals, the body of the amendment tracked their language and we find no error on the part of the trial court in considering them in interpreting the Agreement and amendment.

Moreover, we find no error with respect to the trial court's reliance on 
Estate of Constantine
 as a justification for its consideration of the recitals.  Glenbrook asserts that 
Estate of Constantine
 is not controlling here because it "deals with the imprecise and incorrect denomination of a covenant not to sue as a release."  While we note that the facts in that case are different than those of the instant case because they involve a different type of contract between the parties, we believe the reasoning in that case is pertinent to what occurred here.  In 
Estate of Constantine
, two partners in a law firm and another attorney leased space with the landlord of a building.  Under the lease, the attorney paid rent to the partners, who in turn paid rent to the landlord.  When the attorney died, his estate continued to pay his share of the rent to the partners.  Eventually, however, the estate ceased the payments.  Two lawsuits then arose: the landlord sued the estate to determine the estate's potential liability, and the partners sued the estate seeking the balance of the estate's rent obligation under the lease.  The landlord and the estate reached a settlement, and the landlord signed a release agreement in favor of the estate.  At this point, the partners amended their claim against the estate to add the landlord, asserting that the release agreement signed by the landlord and the estate acted as a release not only as to the estate, but as to the partners as well.  The trial court interpreted the release agreement as a covenant not to sue, applicable only to the estate and not the partners.  On appeal, the partners did not dispute the facts, but presented the issue of whether the trial court had correctly interpreted the release agreement.  Our court on review cited the state supreme court case of 
Batteast v. Wyeth Laboratories, Inc.
, 137 Ill. 2d 175 (1990), and concluded that in interpreting an agreement, a court could look to the circumstances surrounding its execution for the purpose of aiding in the determination of the parties' intent.  See 
Estate of Constantine
, 305 Ill. App. 3d at 260, 711 N.E.2d at 1193.  We then stated:

"When we consider the surrounding circumstances we do not change the terms of the [agreement] or create an ambiguity where none exists. [Citation.] Instead, we consider the circumstances surrounding execution of the document as part of the agreement, reflecting the clear intent of the signators.  We believe that is what the supreme court did in 
Batteast
."  
Estate of Constantine
, 305 Ill. App. 3d at 260, 711 N.E.2d at 1193.

See also 
Batteast
, 137 Ill. 2d at 183 ("[i]n interpreting a contract, we look to the circumstances to determine the parties' intentions").  Our court examined the circumstances surrounding the execution of the release agreement, not just the language therein.  These circumstances included the time when the agreement was signed, the agreement's reference to the settlement between the landlord and the estate, and provisions of the original lease.  Based on these surrounding circumstances, we held that the trial court's interpretation was correct because there was no question that the release was intended to be a covenant not to sue, applicable to the estate only.  See 
Estate of Constantine
, 305 Ill. App. 3d at 260, 711 N.E.2d at 1193; 
Batteast
, 137 Ill. 2d at 183 (in addition to agreement's language, surrounding circumstances, such as what was occurring between parties when agreement was executed, "indicate[d] clearly" the parties' intent in executing the agreement).   

In the instant case, the trial court stated that it was considering the recitals specifically because they "recite[] the circumstance, 
i.e.
, the context in which the amendment was made."  As the court noted, these circumstances included the fact that the amendment was executed soon after Orland Hills initiated the Citizens litigation, in response to the "unknown exigency" of whether Citizens would be obligated to provide water service.  Thus, the court found that this circumstance surrounding the execution of the amendment clearly showed the intent of the parties to tie the exercise of the right to disconnect to the resolution of the litigation rather than to a date certain as was previously contained in the original Agreement when the Citizens litigation had not yet been contemplated.  Based on 
Estate of Constantine
, we find no error in this portion of the trial court's interpretation of the Agreement and amendment.

We note here that 
Estate of Constantine
 is but one example of the recent trend pursuant to which our courts have moved away from the "four corners" rule of contract interpretation as advocated by Glenbrook and toward a more liberal approach.  See 
Ahsan v. Eagle, Inc.
, 287 Ill. App. 3d 788, 790, 678 N.E.2d 1238, 1240 (1997) (courts have come to disfavor strict contract interpretation and the limits placed on the introduction of extrinsic evidence to demonstrate the intent of the parties); accord 
USG Corp.
, 247 Ill. App. 3d at 318, 617 N.E.2d at 71; 
URS Corp. v. Ash
, 101 Ill. App. 3d 229, 234, 427 N.E.2d 1295, 1299 (1981)
.  While our courts have not proposed a complete elimination of the general rule calling for adherence to the plain meaning of the words used by the parties in an agreement, our courts have recognized that, as part of their duty to evaluate the intent of the parties, the circumstances surrounding the agreement's execution should be considered.  See 5 M. Kniffin, Corbin on Contracts §24.7, at 39 (rev. ed. 1998) (courts adopting trend toward abolishing plain meaning rule recognize the impossibility of ascertaining the intended meaning of agreement "without reference to evidence of surrounding circumstances"); see also 
Dungey v. Haines & Britton, Ltd.
, 155 Ill. 2d 329, 336 (1993) (state supreme court looked to other evidence even though agreement at issue was unambiguous).  Our court itself has noted that limiting our interpretation of an agreement solely to its operational portions incorrectly assumes that language is always precise and also forces a court to determine the parties' intent from a viewpoint "removed in time and circumstance."  
Ahsan
, 287 Ill. App. 3d at 790, 678 N.E.2d at 1240, citing 
URS Corp.
, 101 Ill. App. 3d at 234, 427 N.E.2d at 1299.  

In the instant case, we need not even go so far as to adopt the furthest extent of this liberal approach because we are presented with the circumstances surrounding the execution of the amendment within that document's own four corners.  That is, we need not turn to evidence outside the contract between the parties as did the court in 
Estate of Constantine
, because the recitals in the amendment discuss the circumstances surrounding the parties' execution of the amendment here.  Though not operational, the recitals created a context through which the operational portion of the amendment could be construed in relation to both the prior Agreement and Formula's and Orland Hills' intent at the time they later executed the amendment.  It would be illogical to ignore the recitals that are included on the same page as the body of the amendment and are so indicative of the surrounding circumstances relevant to its execution.  See 
Yeomans v. Brown
, 239 Ill. App. 117, 124 (1925) (while recitals are not operational part of contract between the parties, they reflect the intent of the parties and influence the way the parties constructed the contract); see also 5 M. Kniffin, Corbin on Contracts §24.7, at 37 (rev. ed. 1998).

Even if error could be found with respect to the trial court's reliance on 
Estate of Constantine
 and its consideration of the amendment's recitals, we find that such error would not merit the reversal of the instant case but, rather, would constitute only harmless error.  See 
Cleveland Wrecking Co. v. Central National Bank in Chicago
, 216 Ill. App. 3d 279, 293, 576 N.E.2d 1055, 1065 (1991) (even assuming extrinsic evidence of precontract negotiations was erroneously admitted by trial court in construing contract, error is harmless as long as court gave contract language a plain and unambiguous interpretation); 
Hickox v. Bell
, 195 Ill. App. 3d 976, 990, 552 N.E.2d 1133, 1142 (1990) (while court may have erred in admitting extrinsic evidence while interpreting unambiguous contract, this error was harmless based on review of record).  The court's colloquy in the instant case demonstrates that, although it may have looked in part to the recitals, the court principally considered the plain language of the operative portion of the amendment in arriving at its interpretation of the Agreement and amendment together.  It was upon the language found in the body of the amendment that the court determined that the documents were susceptible to no meaning other than the tying of the right to disconnect to the resolution of the Citizens litigation, rather than to a date certain.  Therefore, we find no reason to reverse the judgment of the trial court even if error was present here.  See 
Leonardi v. Loyola University of Chicago
, 168 Ill. 2d 83, 97 (1995) (we may affirm the trial court on any basis found in the record); accord 
Northern Illinois Gas Co. v. Home Insurance Co.
, 334 Ill. App. 3d 38, 55, 777 N.E.2d 417, 430 (2002).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

McNulty and O'Malley, J.J., concur.

FOOTNOTES
1:
A&M and Formula are predecessors in interest to the property and are in no way involved in this cause.

2:
Summary judgment was granted in favor of Orland Hills in that case on May 14, 2002, and a declaration was entered by the trial court that Citizens is indeed obligated to provide water to the property.  See Village of Orland Hills v. Citizens Utilities Co. of Illinois, No. 99--CH--15762 (Cir. Ct. Cook Co.) (May 14, 2002).  Citizens has appealed that decision to our court.  See 
Village of Orland Hills v. Citizens Utilities Co. of Illinois
, No. 1--02--1450 (June 12, 2002).  That appeal is pending and is unrelated to the instant cause.

3:
No appeal was taken from that decision.