NOTICE

Decision filed 02/24/09. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0225

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THOMAS HAGENE,

    Petitioner-Appellant,

v.

DEREK POLLING CONSTRUCTION,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Perry County.

No. 07-MR-2

Honorable
James W. Campanella,
Judge, presiding

_____

JUSTICE CHAPMAN delivered the opinion of the court:

The petitioner appeals an order of the trial court dismissing his petition to enter a judgment in accordance with a final decision of the Industrial Commission pursuant to section 19(g) of the Illinois Workers' Compensation Act (820 ILCS 305/19(g) (West 2006)). He filed this petition after agreeing to a lump-sum settlement with the respondent. The settlement indicated that the respondent had paid all the petitioner's medical bills; however, three past medical bills remained unpaid. The petitioner argues on appeal that the court erroneously found that the lump-sum settlement relieved the respondent of its obligation to pay his outstanding past medical bills. We reverse.

On June 16, 2003, the petitioner, Thomas Hagene, was injured in a work-related accident when he fell from the scaffolding at a construction site. As a result of the accident, he suffered injuries affecting his left arm and shoulder (requiring surgery), right leg, and lumbar spine. He received temporary total disability benefits for a period of 39 weeks, and then he returned to work.

On July 5, 2005, arbitrator John Dibble approved a workers' compensation lump-sum

1

settlement between the petitioner and his employer, respondent Derek Polling Construction. The settlement is on a form agreement prepared by the respondent. The first page contains a section called "Medical Expenses." In that section, there is a space to place a check on a line indicating whether the employer has or has not paid all the medical bills. Here, the employer checked that it had paid all the medical bills. Following that, there is an instruction to "[l]ist unpaid bills in the space below." That space is empty. The first page also contains a section entitled "Temporary Total Disability Benefits." That section provides spaces on which the parties can indicate the beginning and ending dates of the period that an employee was totally temporarily disabled. Both spaces are filled in with "Disputed–See terms of settlement."

On the second page, a section entitled "Terms of Settlement" provides, in relevant part, as follows:

"The Respondent offers and the Petitioner accepts the lump sum of $20,036.10 in full, final, and complete settlement of any and all claims whatsoever under the Illinois Workers' Compensation Act ('Act') [(820 ILCS 305/1 *et seq.* (West 2002))] *** resulting from *** the alleged accidental occurrence on or about June 16, 2003. *** This lump sum is in full and final settlement of any and all claims, including, but not limited to, temporary total disability compensation, past, present, and/or future medical and hospital bills, death, vocational rehabilitation, permanent partial disability to Petitioner's left arm and right leg under Section 8(e) of the Act [(820 ILCS 305/8(e) (West 2002))], and permanent partial disability to petitioner's person as a whole under Section 8(d)(2) of the Act [820 ILCS 305/8(d)(2) (West 2002))]. *** The Petitioner expressly represents and agrees that prior to the approval date of this contract, the Petitioner submitted to the Respondent all reasonable, necessary, and causally related medical and hospital bills[] and that the Respondent has fully satisfied the same prior

2

to the approval date of this contract. At the applicable permanency rate of $284.20, this settlement includes 30% (70.5 weeks) loss of use of petitioner's left arm, under Section 8(e) of the Act."

On January 11, 2007, the petitioner filed an application for the entry of a judgment in accordance with a final decision of the Industrial Commission pursuant to section 19(g) of the Workers' Compensation Act (820 ILCS 305/19(g) (West 2006)). The petitioner alleged that the settlement required the respondent to pay all the petitioner's medical bills to the date of the settlement and that the following bills remained unpaid: $2,326.25 to Dr. Mark Miller, $17,311 to Timberlake Surgery Center, and $340 to I-Flow, totaling $19,977.25.

On February 16, 2007, the respondent filed a motion to dismiss the petitioner's petition. The respondent argued that the "Terms of Settlement" paragraph prohibited the petitioner from requesting the payment of these bills.

On February 27, 2007, the court held a hearing in the matter and entered an order granting the respondent's motion to dismiss on March 6. The court found that the respondent's obligation had been "satisfied of record." This appeal followed the denial of the petitioner's motion to vacate and reconsider.

The petitioner argues that the trial court erred in its interpretation of the lump-sum settlement agreement. He contends that (1) the contract did not prohibit him from seeking reimbursement for the medical bills at issue, (2) the "Terms of Settlement" section did not relieve the respondent of its obligation to pay all causally related medical expenses, and (3) assuming that the contract is ambiguous, it was drafted by the respondent and must therefore be construed against the respondent. The respondent argues that (1) the settlement unambiguously provides that it had fulfilled its obligation to pay all the petitioner's medical bills and (2) because the parties agree, and the court found, that the settlement is unambiguous, there is no need to resort to a rule of construction such as that found in the

petitioner's final argument.

"A release is a contract wherein a party relinquishes a claim to a person against whom the claim exists, and a release is subject to the rules governing the construction of contracts." *Carona v. Illinois Central Gulf R.R. Co.*, 203 Ill. App. 3d 947, 951, 561 N.E.2d 239, 242 (1990). However, when interpreting settlement contracts, Illinois courts routinely look to the intent of the parties in order to ascertain the scope and extent of the claims released. *Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 440-41, 437 N.E.2d 817, 822 (1982). "Particularly with a release, this intent ' "is discerned from the language used *and the circumstances of the transaction*." ' " (Emphasis in original.) *Farmers Automobile Insurance Ass'n v. Kraemer*, 367 Ill. App. 3d 1071, 1074, 857 N.E.2d 691, 694 (2006) (quoting *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838, 648 N.E.2d 317, 321 (1995) (quoting *Carona*, 203 Ill. App. 3d at 951, 561 N.E.2d at 242)). We are able to examine the circumstances surrounding the transaction without changing the terms or creating an ambiguity. *First Bank & Trust Co. of Illinois v. Village of Orland Hills*, 338 Ill. App. 3d 35, 46, 787 N.E.2d 300, 310 (2003).

We thus begin our analysis by examining the fact that the settlement arose in the context of a workers' compensation claim. The purpose and policy embedded in the Workers' Compensation Act is to promote the general welfare of the citizens of the state. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357 (1978). The Workers' Compensation Act affords protection to workers by providing prompt and equitable compensation for workplace injuries. *Kelsay*, 74 Ill. 2d at 180-81, 384 N.E.2d at 356. It is a humane law of a remedial nature that should be liberally construed to achieve its purpose. *Shell Oil Co. v. Industrial Comm'n*, 2 Ill. 2d 590, 596, 119 N.E.2d 224, 228 (1954). The right to be compensated for medical costs associated with work-related injuries is at the very heart of the Workers' Compensation Act. *Martin v. Kralis Poultry Co.*, 12 Ill. App. 3d 453, 460,

4

297 N.E.2d 610, 615 (1973).

It is important here to emphasize that the employer's obligation to pay all the medical bills related to the petitioner's work injury flows not from the settlement contract, but from the Workers' Compensation Act. See 820 ILCS 305/8(a) (West 2002) (requiring an employer to pay for all the necessary medical care and first aid causally related to an on-the-job injury). The employer is, of course, only required to pay for care that is reasonably required to treat injuries that are actually caused by the work-related accident. *Ingalls Memorial Hospital v. Industrial Comm'n*, 241 Ill. App. 3d 710, 717, 609 N.E.2d 775, 781 (1993) (citing *Quality Wood Products Corp. v. Industrial Comm'n*, 97 Ill. 2d 417, 423, 454 N.E.2d 668, 671 (1983)). If there is a dispute over whether any of the petitioner's injuries are, in fact, causally connected to his or her on-the-job accident, the parties may choose to resolve this dispute as a part of a settlement. If the parties agree that only some of the medical bills are causally related, there may well be disputed unpaid medical bills for which the employer is, by agreement, not obligated to pay. However, unlike the indicated dispute over the length of total temporary disability here, the settlement agreement does not indicate a dispute regarding whether any of the bills were causally related. Instead, in the medical-expenses section it indicates that the employer has paid all the medical bills. Paradoxically, the respondent conceded at oral argument that the bills at issue were in fact causally connected to the petitioner's accident. Nevertheless, the respondent argues that, because the settlement contract is unambiguous, the actual facts surrounding the execution of the settlement are immaterial because we are foreclosed from any extraneous consideration under contract law. Essentially, the respondent wants us to decide this case in a vacuum, looking only to the four corners of the document.

Fortunately, we do not find ourselves to be so constrained under Illinois law. "No form of words, no matter how all-encompassing, will foreclose a court's scrutiny of a release

5

or prevent a reviewing court from inquiring into the surrounding circumstances to ascertain whether it accurately reflected the parties' intention." *Kraemer*, 367 Ill. App. 3d at 1074, 857 N.E.2d at 694.

Here, the amount of the settlement–$20,036.10–does not include *any* amount for the payment of medical bills. The settlement amount was calculated following the statutory guidelines for permanent partial disability. Section 8(e) of the Workers' Compensation Act (820 ILCS 305/8(e) (West 2002)) provides that an injured employee who permanently loses the use of any body part is to be compensated for that loss. The amount of that compensation is determined, in part, by the amount of weekly compensation the employee receives for total temporary disability under section 8(b)(1) of the Workers' Compensation Act (820 ILCS 305/8(b)(1) (West 2002) (providing that an employee is to receive 66⅔% of his or her normal weekly salary while totally temporarily disabled)). 820 ILCS 305/8(e) (West 2002). The petitioner was entitled to $284.20 per week while totally temporarily disabled using this formula. For a total permanent loss of the use of an arm, an employee is entitled to the equivalent of 235 weeks of total temporary disability. 820 ILCS 305/8(e)(10) (West 2002). The parties here agreed that the petitioner's loss of the use of his arm was 30%, and he was therefore entitled to 30% of 235 weeks, or 70.5 weeks. Multiplying 70.5 weeks by his weekly total temporary disability amount ($284.20) yields a total of $20,036.10. That was the full extent of the settlement, thus making it clear that no part of the settlement amount was compensation for past unpaid medical bills related to the accident.

Nonetheless, the respondent argues that by entering into the settlement contract, the petitioner waived his right under the Workers' Compensation Act to obligate the respondent to pay for unpaid related medical bills. Unquestionably, employees can and do contract away their right to have past and future related medical expenses paid for by their employers. However, a waiver of important statutory rights must be explicit. See *Gallagher v. Lenart*,

6

226 Ill. 2d 208, 237-38, 874 N.E.2d 43, 61 (2007) (finding that general release language was insufficient to waive an employer's statutory right to a workers' compensation lien in a related suit against a third party on the basis that statutory rights must be explicitly waived). The supreme court in *Gallagher* went on to cite a number of other cases requiring an explicit waiver, stating: "We note it is not uncommon to require the explicit waiver of certain rights. In various other contexts, where an important statutory right is at issue, an explicit manifestation of intent is required before the right in question can be deemed waived." *Gallagher*, 226 Ill. 2d at 239, 874 N.E.2d at 62.

The respondent points to the "Terms of Settlement" section in support of its argument that the payment of the petitioner's past medical bills was specifically waived. Were we to read these terms in isolation, we would be inclined to agree with this interpretation. However, we are instructed to give effect to *all* the relevant contractual language to resolve the question of the parties' intent. *Gallagher*, 226 Ill. 2d at 241, 874 N.E.2d at 63. This includes the contract recitals in which the respondent indicated that it had paid all the medical bills, when in truth and in fact it had not. "[W]hile recitals are not [an] operational part of [a] contract between the parties, they reflect the intent of the parties and influence the way the parties constructed the contract." *First Bank & Trust Co. of Illinois*, 338 Ill. App. 3d at 48, 787 N.E.2d at 311 (citing *Yoemans v. Brown*, 239 Ill. App. 117, 124 (1925), and 5 M. Kniffin, Corbin on Contracts §24.7, at 37 (rev. ed. 1998)). The contract recitals create a context through which the operational portion of the contract can be better understood, because they indicate the relevant circumstances to its execution. *First Bank & Trust Co. of Illinois*, 338 Ill. App. 3d at 48, 787 N.E.2d at 311.

When we consider the entire contract in the context of all the surrounding circumstances, we conclude that the parties did not intend to discharge the respondent's statutory obligation to pay the petitioner's past related medical bills. What is clear from the

7

surrounding circumstances is that the settlement was premised on the understanding that the respondent had in fact paid all the outstanding medical bills to the date of the settlement as indicated in the contract recital. To find otherwise would result in a windfall to the respondent, because it would be absolved from paying bills as required by statute without paying the petitioner any real consideration (the settlement amount almost equals the unpaid medical bills) as well as a loss to the petitioner (after the payment of the medical bills in question and attorney fees). This is a result the parties never could have intended. We will not interpret the settlement contract in such a way to defeat a claim not then in the minds of the parties. *Gladinus v. Laughlin*, 51 Ill. App. 3d 694, 696, 366 N.E.2d 430, 432 (1977). To do so would not only lead to an absurd and unjust result but also seriously undermine the remedial purpose of the Workers' Compensation Act.

For the reasons stated, we reverse the order of the trial court dismissing the petitioner's application for a judgment in accordance with section 19(g) of the Workers' Compensation Act. We remand.

Reversed; cause remanded.

STEWART and WELCH, JJ., concur.

NO. 5-07-0225

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THOMAS HAGENE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Perry County. |
| | ) | |
| v. | ) | No. 07-MR-2 |
| | ) | |
| DEREK POLLING CONSTRUCTION, | ) | Honorable |
| | ) | James W. Campanella, |
| Respondent-Appellee. | ) | Judge, presiding |

---

**Opinion Filed**:  February 24, 2009

---

**Justices**:  Honorable Melissa A. Chapman, J.

Honorable Bruce D. Stewart, J., and
Honorable Thomas M. Welch, J.,
Concur

---

**Attorneys for Appellant**  Thomas C. Rich, Jennifer L. Barbieri, Thomas C. Rich, P.C., 6 Executive Drive, Suite 3, Fairview Heights, IL 62208

---

**Attorney for Appellee**  Andrew S. De Blank, Knell & Kelly, L.L.C., 504 Fayette Street, Peoria, IL 61603

---